Tilghman C. J.
The objection to the verdict in this case, is, that due notice of non-payment by the maker of the note <on which the action is founded, was not given to the defendant who was the indorser. It is confessed that due notice was not given; but the plaintiff contends, that under the circumstances of the case, notice was not necessary. The circumstance principally relied on at the trial, and on which the plaintiff had the charge of the court in his favour, is, that at the time when the note was made and indorsed, and also at *336 the time when it fell due, it was known to the defendant thaf James Brown & Co. were insolvent. If the case rested solely on this objection, I should be for granting a new trial, because the cases cited by the plaintiff, of De Berdt v. Atkinson (2 H. Black. 336.) and Cornay v. Da Costa (1 Esp. Rep. 302.) have been overruled in Nicholson v. Gouthit (2 H. Black. 609.) and Esdaile v. Sowerby, (11 East, 114.) The case of Jackson v. Richards (2 Caine’s T. Rep. 343.) agrees with the law as settled by the last English cases. But I do not rest my opinion solely upon the authority of these cases. The reason of the thing demonstrates that the insolvency of the maker of a note, though known to the indorser, ought not to discharge the holder from giving notice. There are various degrees of insolvency, and it rarely happens that a man is totally insolvent. So that there is a chance of getting something by an application to the debtor. Besides, if a man has nothing of his own he may have friends, who, to relieve him from pressure, will do something for him. The indorser, therefore, has a chance of securing himself at least in part. The only reason that can be assigned for insolvency taking away the necessity of notice, is, that notice could be of no use to the indorser., But it is almost impossible to prove that it might not have been of use. Therefore it is necessary. There is another circumstance in this case, however, operating powerfully in favour of the plaintiff. The house of James Brown '& Co. consisted of James Brown and Armat Brown. When the note fell due, James Brown was in Europe, and Armat Brown in this city. A few months befare it was due the defendant received from Armat Broten, an assignment of his whole estate, for the purpose, among other things, of indemnifying him against his indorsements on account of James Brown & Co. Now, by the taking of this assignment, it is not unreasonable to presume, that the defendant took upon himself the payment of the indorsed notes, especially as when he did receive notice (10 days after the note fell due), although he knew and remarked, that it was out of time, he did not deny his responsibility, but said that his ability to pay would depend on the arrival of a vessel. I agree therefore, with Bond v. Farnham, (5 Mass. Rep. 170.) where it was held, that in such a case the indorser dispenses with notice. Inasmuch then as it appears upon the whole of this case, that notice of non-payment was not necessary, no injustice has been *337 done by the verdict, and therefore, a new trial ought not to be granted.
Yeates J.
I have no hesitation in admitting, that my charge to the jury in the particular of notice to the defendant of the non-payment of the note by the drawers, does not accord with the most modern authorities. I considered the cases of De Berdt v. Atkinson in 1794, (2 H. Black. 336.) and of Cornay v. Da Costa in 1795, (1 Esp. Rep. 302.) under circumstances very similar to those disclosed in evidence on the trial, as decisive of the question of notice ; and that, according to the expressions of Buller J. in the first case, the general rule as to notice was only applicable to fair transactions, where the note had been given for value, in the ordinary course of trade. The justice of the case in favour of the plaintiff struck my mind forcibly, and I thought Nicholson v. Gouthit, in 1796, (2 H. Black. 609.) and Jackson v. Ritter, in 1805, (2 Caines, 343.) might be admitted to be law, without overthrowing the two former decisions. In the first of them, (2 H. Bla. 610.) it is stated, that if the note had been presented when it became due, it would have been paid, as Burton (a prior indorser) had lodged a sufficient sum of money in the defendant’s hands for that purpose, but which he paid away, when he found the note did not come to him as he expected. It appeared to me very singular, that although Eyre Chief Justice, and Heath and Rooke Justices, sat in the Common Pleas, and decided both cases, the decision in De Berdt v. Atkinson was not cited nor adverted to in Nicholson v. Gouthit, if it established a different principle, either by the court or counsel, although nineteen months only had intervened. I was led to remark on the trial that Chitty, (who is generally deemed a very correct compiler, in his treatise on Bills and Notes, p. 87, 1 Bond. Ed.) lays down the broad proposition, that the payee of a note, indorsing it to give it currency, and knowing the insolvency of the maker at the time, cannot insist on the want of notice as a defence; and yet, though he cites Nicholson v. Gouthit, in the following page he does not consider it as effecting any change in the commercial law before asserted. In the New York case (2 Caines, 343.) notice was given to the indorser of non-payment by the drawer, prior to any demand upon the drawer, and consequently the notice was null, as the drawer was not ' *338 in default when he received notice. I placed too much reliance on the circumstances detailed in the cases of 1/94 and 1/95, without sufficiently attending' to the reasoning of the court therein, which is contradicted in the later cases. Esdaile v. Sowerby, in 1809, (11 East, 117.) was not cited on the trial, but it is held therein by the whole court that Nicholson v. Gouthit is so decisive an authority on this subject, that the court could not again enter into the discussion of the doctrine. It seems now settled, that notwithstanding it sounds harsh, that a known bankruptcy should not be equivalent to a demand or notice, the rule as to both is too strong to be dispensed with. At the same time, I cannot see how the defendant can get over the late case of Bond et al. v. Farnham, in 1809, (5 Mass. Rep. 170.) In this instance, James Brown, one of the partners in the firm, when the note fell due on the 5th June, 1812, was in Europe, and had been there some time before ; Armat Brown the only resident partner in America, had assigned all his real and personal estate to the defendant to indemnify him for his advances and indorsements. Against neither could any effective measures be pursued within the period of imputed delay. In the language of Chief Justice Parsons, “ any demand by the defendant ‘i would be fruitless, as he had secured all the property the “ drawer on the spot had, for the express purpose of keeping “ him harmless.” The reason of the rule as to notice, must wholly fail under such circumstances. On this last ground, I am of opinion, that judgment be rendered for the plaintiff on the verdict.
Brackenridge J. gave no written opinion, but said that the leaning of his mind was-that notice was necessary.
New tidal refused.