The opinion of the court was delivered by
Duncan, J.
This was an action against the defendants, on a negotiable note, dated the 10th of November, 1816, for six hundred dollars, in which Starrett was the drawer, E. W. Hale the payee, Hale the first indorser and Chriswell the second. It was a note for the accommodation of the drawer, and Hale declares in the memorandum subjoined to it,that it was for the use of the drawer. It was payable in six months, and was discounted by the Juniata Bank. The drawer died before the day of payment; and, on the 2d of December, 1816, letters of administration issued on his effects to Rebecca, his widow, Robert, his brother, and Hale and Chriswell.
On the 14th of May, 1817, the note was protested, but no notice of demand or non-payment was given to the indorsers, or either of them.
The Juniata Bank contended, that notice of non-payment was unnecessary, inasmuch as the indorsers were two of the administrators, who, in their character of administrators, must have had knowledge of the non-payment of the note, and had all the estate of the drawer in their hands to secure themselves.
The indorsers insist, that if knowledge was proved on them, of the fact of non-payment, still they were entitled to notice from the Juniata Bank, the holder of !he note, of the intention of the bank to call on them. And Chriswell, who is joined in the action under the act of assembly, insists, further, that he should have had notice; for although the note might not have been paid by the drawer, who died before it became due, still it might have been paid by the first indorser, and the notice of the non-payment was an important matter to him. It is further insisted by the defendants, that, so far from the bank giving notice of an intention to- look to them for payment, in 1818 they obtained a judgment by confession from the administrators, a special judgment de bonis intestati, and not otherwise; and that they delayed to proceed on this judgment, and did not call on the indorsers until this action was brought, which was lacking a few days of six years, when the statute of limitations would have barred the recovery.
On the trial of the cause before the Chief Justice at the late Circuit Court, for the purpose of having the question settled in this court, which is admitted to be new in species, he instructed the jury, that neither the demand of payment nor notice of non-payment was necessary, and it is from this decision the defendants appealed; and *160 on tbis opinion it is now only necessary fo- this court to decide. From the view they have taken of this subject, if the court did not decide on the general doctrine of the necessity of notice of nonpayment from the holders of the note, the circumstances of the situation in which Chriswell, the second indorser, stood, and the judgment against the administrators, and the long delay in bringing the action, were matters worthy of serious consideration; but they have judged it most advisable to decide upon the general principle.
What is the nature of the engagement of the indorser? It is founded on the law merchant, and is governed by its principles: his undertaking is only to pay in case the maker does not pay. The indorser takes it on the condition that he will first apply to the maker; and, in an action by the indorsee against the indorser, the declaration must aver that on the note becoming due, the demand was made of the drawer, and that he refused to pay, of which the defendant had notice. It is an essential part of the plaintiff’s case, and even a verdict would not cure the omission. This was decided in the Court of Errors and .Appeals, and the judgment of the Supreme Court reversed. Miles v. O’Hara. And though the declaration alleged that the drawer of the bill became liable by the custom of merchants, this is not sufficient, because the law merchant is not a matter of fact, but of law, and the want-of notice is the very gist of the action; for it is that which raises the implied promise. M'Kinney v. Crawford, 8 Serg. & Rawle, 353.
That knowledge of non-payment is not notice, is very clear; for the notice must come from the holder himself, or some one who is a party; for the notice must assert that the holder intends to stand on his legal rights, and to resort to the indorser for payment; and therefore, where the drawer had notice before the bill was due that the acceptor had failed, and gave another person money to pay the bill, and the holder neglected to give notice of its dishonour, it was held that the drawer was discharged. Nicholson v. Gouthit, 2 Hen. Bl. 612. Whitfield v. Savage, 2 Bos. & Pull. 277. Esdaile v. Sowerby, 11 East, 114, 117. And where a few days before the bill became due, the acceptor informed the drawer that he must take it up, and gave him part of the money to assist him in so doing, and the latter promised to take up the bill accordingly, it was held the latter might nevertheless set up, as a defence, that the bill was not duly presented for payment, and that he had not regular notice of the dishonour. Baker v. Birch, 3 Campb. 107. The notice must come from one who can give the drawer or indorser his immediate remedy on the bill, and not from a stranger; otherwise it is merely an historical fact: it must be legal notice, othei’wise the party is discharged from the liability he contracted by indorsing it. 2 Cowp. 177. Chitty on Bills, 292. The reason given, in Ex parte Baisley, 7 Ves, jr., 597, is very satisfactory; for the ground of discharging the drawee is, that the drawer gave credit to some other person liable, as between him and the drawer. *161 Notice from any other person than the holder, that the note is not paid, is not notice that the holder does not give credit to a third person. This is very strongly put by Ashhurst and Buller, Justices, in Tindall v. Brown, 1 Term Rep. 167. According to Ashhurst, “notice means something more than knowledge, because it is competent to the holder to give credit to the maker. It is not enough to say that the maker does not intend to pay, but that the holder does not intend to give credit to such maker: the party ought to know whether the holder intends to give credit to the maker, or to resort to him.” And, by Buxrer, J;, it was said, “The notice ought to purport, that the holder looks to the party for payment, and a notice from another party cannot be sufficient: it m,ust come from the holder.” And this doctrine of Buxxer has been acted upon in many cases there, as Lord Exdon observed'in Baizeley’s case. Now, here these indorsers ought to have had notice from the Juniata Bank; for that would be notice that they did not mean to resort to the estate on which, with others, they had administered, but to them in the character of indorsers; whereas, by not giving notice, they had a right to conclude the bank intended to look to the drawer. And, according to Ashhurst’s opinion, they had a right to know from the holder, the Juniata Bank, that they intended not to give credit to the estate of John Starrett, but to look to them personally as indorsers.
The argument,'that the indorsers received no injury from the want of notice does not now hold. Whatever vacillation prevailed in courts for a time, it is now settled, that the insolvency of the draiVer of a note does not dispense with the necessity of demand, and notice of non-payment. Between the parties.to the notice the rule is inflexible, and it is not open to the inquiry whether notice could have availed the indorser. The holder has no right to speculate and judge what may be the interest of the parties: his duty is a plain one — to give notice; and, if that rule is dispensed with, it opens a door for endless litigation, and perplexing .inquiries. Death, bankruptcy, notorious insolvency, or the drawer’s being -in prison, constitute no excuse either in law or equity. Gibbs v. Cannon, 9 Serg. & Rawle, 201. Notice to one of several partners, who are joint indorsers, is notice to all; and, if one of the drawers of the bill be also an acceptor, and there is no fraud in the transaction, no notice, in fact, is necessary to the others. Neither is notice necessary to a party who by his conduct dispensed with it, as, by engaging to call on the holder, and ascertain whether the acceptor has not paid the bilí. Chitty on Bills, (Carey & Lea’s Ed.) 297. So, if the drawer of a bill promises to pay, this is a waiver of the objection of the want of notice, where the party knew all the facts and the legal consequences. But it has been recently held, that though the drawer of a hill may impliedly waive his light of defence, founded on the laches of the holder, *162 yet an indorser can only do so by an express waiver. Borradale v. Lowe, 4 Taunt. 93, 96, 97. Brown v. M'Dermot, 5 Esp. Rep. 265. And there is, in all those cases of want of notice, a material and essential difference between the drawer of a bill and the indorser; for, if the drawer of a bill had no effects in the hands of the drawee or acceptor, and the bill is drawn for the accommodation of such drawer, he is prima facie not entitled to notice of the dishonour of the bill, nor can he object in such case. He, being the the real debtor, acquires no right of action against the acceptor by paying the bill, and suffers no injury from want of notice of nonacceptance or nonpayment, (12 East, 71,) and therefore the laches of the holder affords him no defence. 4 Taunt. 733. But it is no excuse for not giving notice to the indorser of a bill, that the acceptor had no effects. Peake’s Rep. 202. “ That circumstance,” said Lord Kenton, “ will not avail the plaintiff. The rule extends only to actions brought against the drawer: the indorser is, in all cases, entitled to notice.” See Chitty, 259, 295.
It has been attempted to bring this within the principle of Bond v. Farnham, 5 Mass. R. 170, and Barton v. Baker, 1 Serg. & Rawle, 334; but those cases were decided on very different grounds. In the first, Chief Justice Parsons says, “The opinion was founded on this, that if the indorser, representing himself liable for the payment of particular indorsements,receives a security to meet them, he shall not afterwards insist on a fruitless demand upon the maker, or a useless notice to himself, to avoid payment of demands, which on receiving security he has undertaken to pay.” In the latter, the late Chief Justice put it on the ground, that it was not unreasonable to suppose that the defendant took upon himself the payment of the indorsed notes, and on no other ground could it be held Jhat the notice of non-payment was not necessary.
But here the indorsers had no security, beyond any other simple contract condition of John Starrett; they obtained no advantage beyond strangers to the administration; for by the death of the intestate, his goods and lands.were seized by act of law, by a kind of statute execution' in the hands of his administrators, just as in the case of a cotnmission of bankruptcy, and tó be discharged in a prescribed order; in which the administrator cannot prefer himself or retain his own debt, as he could by the laws of Eng•land. The lands, the fund here for the payment of debts, do not come into the possession of the administrator: he has no right of entry, and can bring no ejectment; the possession descends to the heir. The executor or administrator have, by virtue of their office, in no case a right to the possession of the deceased’s lands. As I do not find the case of an-indorser becoming an administrator to the drawer, in any decision among the books, of authority, to form an exception to the necessity of giving notice to the drawer, and as there is no reason vyhy it should, I am not for relaxing one jot *163 further than it has been done, this wholesome and convenient rule. Indeed, we find judges regretting that it had ever been departed from in any case. ■
The Chief Justice, who decided the case in this court, for the purpose of bringing this new question before the court, joins in the opinion of the other members of the court, that the indorsers not having received notice of non-payment, are not liable on the indorsement, and that the appeal be sustained.
The rule of demand and notice is one of universal obligation. I would not extend the exceptions further than to the cases which have been expressly decided. Policy and the convenience of the public, require a rigid adherence to the rule; for, otherwise, excéption would creep in after exception, and leave the law, which ought to be certain, open to speculation and to doubt.
Judgment reversed.