Oldham, J. We will proceed to the consideration and determination of the various questions made in this case, in the order in which they appear of record. At the -September term 1841 this cause was tried in the circuit' court, when the jury returned a verdict against the defendant, Faulkner, and in favor of the defendant, Walker. Faulkner moved for a new trial and the court “sustained, the motion and granted a new trial in the case.” The cause was then continued, and in all the subsequent entries, it is entitled against both defendants, but the record does not show any substantive act performed by the defendant, Walker, by which it is made to appear, manifestly, that he was or was not considered to be still in and before the court. On the 25th January, 1842, the cause was again submitted to a jury, and a verdict was returned for the defendants,' and the court thereupon adjudged “that said Sandford C. Faulkner and Samuel D. Walker go hence” &c. The plaintiff, Walker, prosecuted his writ of error against both the defendants, who joined in error in this court, and at the July term, 1844, this court reversed the judgment and remanded the cause for further proceedings. (See Walker vs. Walker, 5 Ark. Rep. 643.) At the first term after the cause was remanded to the circuit court, the defendant, Walker, filed his motion “ to have his name stricken from the case” on the ground “that at the September term 1841 ” of said circuit court “ on the trial of the issue joined in said cause, a judgment was rendered in favor of said defendant and against said plaintiff which said judgment is in full force” &c. The motion was overruled and he excepted. Upon the trial anew the defendant offered to read to the jury the aforesaid “ verdict of the jury in his favor and the judgment of the court and the motion of Faulkner for a new trial and the order of the court on the motion” which being excluded by the court he excepted. These decisions of the court were correct and proper. Whether the judgment rendered in favor of Walker upon the first trial was set aside upon the motion of Faulkner for a new trial, is a wholly immaterial question, and the correctness of the action of the circuit ■court upon the point subsequent to the mandate of this court cannot, as seems to be supposed by the counsel, be determined by that inquiry. If that judgment was set aside, and a new trial granted as to Walker as well as Faulkner, the motions made to the circuit court were unsustained by the facts upon the record, and were properly overruled. But allowing the fact to be, as insisted upon by the plaintiffs in error, that said judgment was set aside upon the motion of Faulkner, that no new trial was granted as to the defendant, Walker, and that he was wholly unaffected by the subsequent proceedings of the court, the plaintiff below sued out his writ of error against both defendants, brought the whole record into this court, and upon the errors assigned this court reversed the judgment of the court below as to both defendants. The defendant Walker was a party to the writ of error and was subject to the proceedings had in this court, and consequently, if the first verdict and judgment rendered in his favor in the circuit court until then remained in full force and effect, it was brought into this court by writ of error, and by its judgment and decision was reversed and set aside. And so if the first judgment was set aside upon the motion of Faulkner for a new trial, the like consequences attach to the final judgment of the court in favor of both parties. If the first verdict and judgment in favor of Walker was not set aside, but remained in full force, the subsequent action of the circuit court, so far as it affected him, was void, and the last verdict and judgment in favor of both parties did not confirm or prejudice his rights, and whether the first or last judgment in his favor was a valid judgment is wholly immaterial. It was a valid judgment in his favor and not a void one that was reversed. We cannot now determine which judgment this court took into consideration as a valid judgment nor inquire into the propriety of the reasons given for reversing it. As the former writ of error sued out in this case brought the whole record before the court, and the judgment as to both defendants was reversed and the cause remanded for further proceedings, nothing is now before us but the proceedings of the circuit court subsequent to the mandate. The next error assigned is that the court admitted the evidence of Lee. This evidence consisted of a deposition informally and irregularly taken; but these objections were waived and its admissibility opposed “ on the ground that it was incompetent as evidence.” This deposition detailed a conversation between the witness and defendant Faulker in November 1839 in relation to a bill pf exchange upon which the suit was brought. The witness states that “ in November 1839, he was talking with Faulkner about the draft. Faulkner told him that it was right, that the draft would be paid, told him to say so to John W. Walker, which witness did. Faulkner in amount acknowledged his responsibility for the payment of the draft and desired him to let Walker know what he said.” This was a mere admission of responsibility for the payment of the draft before it became due, amounts to no more than the endorsement itself, and is an acknowledgment of liability for the payment of the bill provided the holder uses due diligence in making demand of payment of the acceptor and giving the requisite legal notice to the endorser in order to fix his liability. Such an admission is not evidence to prove either demand and notice, or a waiver of them, as it was made before the bill matured. Had the admission been made after the maturity of the bill it might properly have gone to the jury as a circumstance tending to show a waiver of demand and notice. But even in that case the deposition should have been read subject to this qualification by the court. The witness, after stating what Faulkner did say, then says “ Faulkner in amount acknowledged his responsibility for the payment of the draft.” This was an inference drawn by the witness from the statements of Faulkner. He should have confined himself to what he did say and left it to the jury to draw the inference. A witness should state facts,- it is the province of a jury to draw inferences from the facts. Although the deposition of Lee should not have been read, yet if there was sufficient evidence to establish the liability of Faulkner exclusive of that deposition, that error will not be a sufficient cause for the reversal of the judgment. The next error assigned is that the court, gave the instructions asked by the plaintiffs below. The first two instructions given relate to the indemnity received by the defendant, Walker, and his liability without demand and notice. The correctness of these instructions, we will first examine. Judge Story in his Com. on Bills of Exchange, 359, says, “There are other cases in which an endorser would not be entitled to strict notice. As, for example, if he is a mere accommodation endorser, and at the time of his endorsement he has received funds of the drawer to pay the bill and secure him an ample indemnity, he will not be permitted to object, that he has not received due notice of the dishonor of the bill, for in such case he cannot complain of any loss or injury from want of notice since he has funds in his own hands to meet the payment. If he has received funds from the drawer for a part payment only, he will still be entitled, to strict notice, but at the same time, although no such notice has been given, the holder will be entitled to the funds. It follows, a fortiori, that if by prior arrangements between any of the parties, the necessity of notice has been expressly or impliedly dispensed with, as between these parties, no notice need be given, and the want of it is entirely excused; for here the maxim strictly applies. duilibet potest renunciare juri pro se introducto. The same doctrine, founded upon the same general principle, pervades the French law, and, indeed, it is so reasonable that it should seem to be founded in the very elements of universal jurisprudence.” Chancellor Kent, 3 Com. 114, thus lays down the rule. “ So if the indorser has protected himself from loss, by taking collateral security of the maker of the note, or an assignment of his property, it is a waiver of his legal right to require proof of demand and notice.” It is contended by the plaintiffs in error that this rule extends only to cases “ where there are but three parties, the drawer, in-dorser and payee, and the endorser takes from the drawer an assignment of his effects for the express purpose of paying the bill, and thereby making a demand on the drawer fruitless, and becoming himself the real debtor.” We have taken some pains to look into the reported cases to see if this position is correct. We find that many of the cases do not go further, because the facts involved in them did not require a more extensive application of the rule. In Corney vs. DaCasta, 1 Esp. Rep. 302, the makers in compounding with their creditors gave notes, which were endorsed by the defendant, who under an arrangement at the time, took effects of the insolvents to the amount of the composition, Buller J¡ said, the defendant made himself liable at all events, the creditors insisted upon it, he was therefore solely liable and being so could not avail himself of want of notice. In Bond vs. Farnham, 5 Mass. Rep. 170, the maker assigned all his property to the endorser for his security against his endorsements, and it was held that demand and notice were thereby waived. The assignment covered all the property of the maker, which was not sufficient to meet all the endorsements. Barton vs. Baker 1 Serg. & Rawle 334, is to the same extent. See also Mechanic's' Bank vs. Griswold, 7 Wend. Rep. 165. In Mead vs. Small, 2 Greenleaf’s Rep. 207, the endorser took a mortgage upon the real estate of the maker of the note as collateral and sufficient security for the amount, and the court held that he was not entitled to demand and notice, but said “ if the endorser has protected himself from eventual loss by his own act in taking security from the maker, such conduct must be considered as a waiver of the legal right to require proof of demand and notice. In Dunham vs. Price, 5 Yerg. Rep. 300, the maker of the‘note placed in the hands of the endorser a sufficient amount of property to indemnify him against his endorsement, the court held that the taking of such security dispensed with the necessity of proof of notice. In Watt vs. Mitchell, 6 Howard's (Miss) Rep. 131, an accommodation endorser took a mortgage from the maker of the note as an indemnity, but subsequently released a large portion of the mortgaged estate, the court in their opinion said “ the question is whether an endorser, who obtains indemnity for his endorsement from his principal does not thereby dispense with notice of demand and refusal to pay. We think he does, and especially under the circumstances of this case. Here the endorsers obtained a formal mortgage of a very large amount of property, and had the same recorded as an indemnity against the several undertakings and liabilities, and that they actually and of their own accord released to their principal a large portion of the mortgaged estate, without any agency or consent of the holder of this note; and if the property remaining in their hands proved! insufficient to indemnify them it was their own fault, and not' binding on the holder of the paper.” These cases fully establish the principle that if the endorser take a sufficient security from the maker to indemnify him against his endorsement it will dispense with proof of demand and notice of non-payment. But it is insisted that the security in this case was from th’e first to the second endorser. The -same relation exists between them as between the drawer and the first endorser and the reason of the rule applies as readily to one case as the other. And in this view we are sustained by Judge Stohy, who after stating the .general rule as between the drawer and the endorser, continues, “ it follows, a fortiori, that if by prior arrangements between any of the parties, the necessity of notice has been expressly or impliedly dispensed with, as between these parties no notice need be given.” Walker, one of the defendants below, received notes from Faulkner and Sevier to the amount of about $3800 as an indemnity to him against his endorsement. The amount was amply sufficient to cover his liability and it was proven, that the makers of those notes at the time of the maturity of the bill- were good for the- . amount. We are, consequently, of opinion that the facts proven dispense with the necessity of proof of demand and notice as toJ Walker, and that the instructions of the court below upon that-point were correct. The instruction asked by the defendants below upon this point was an instruction as to facts, not of law, and was contradicted by Walker’s own statement. The third instruction asked -was properly given. Chancellor Kent, 3 Com. 113, says “a subsequent promise to pay by a party entitled to notice will amount to a waiver of the want of demand or notice, provided the promise was made clearly and unequivocally, and with a full knowledge of the fact of a want of due diligence on the part of the holder.” Hopes vs. Alder, 6 East. 16,was an action against the drawer to whom no notice of non-payment had been given. It was proved that upon a meeting, some time after and before the action, brought between the plaintiff and defendant, the latter said “I will see it paid.” Lord Kenyon*C.- J., said “ this subsequent promise was decisive.” And so, in the case of Lundie vs. Robertson, 7 East. 231, which was a suit by an endorsee against the endorser and no evidence of presentment or notice, but it was proven that being called upon by the plaintiff’s clerk some months after the bill was due, the defendant said “he had not the cash by him, but if the clerk would call in a day or two and bring the account (meaning the expenses) he would pay it.” The bill was shown to him at the time. On the second application he offered a bill on London for the debt and expenses, which was refused, he then said he had not had regular notice, but as the debt was justly due he would pay it.- Chambee,-J.-, thought this sufficient. On a rule nisi for a new trial and cause shown Lord Em.enborotjgh said “ the case admits of no doubt; it was to be presumed prima facie from the promise to pay that the bill had been presented in time, that due notice had been given; that no objection could be made to payment, and that every thing had been rightly done; and that -this superseded the necessity of the ordinary proof. There are numerous other cases to the point. Wood vs. Brown, 1 Stark. R. 217. Rogers vs. Stephens, 2 Term. R. 713. Anson vs. Bailey, Bul. N. P. 276 Pierson vs. Hooker, 3 J. C. R. 68. Hopkins vs. Liswell. Walket vs. Laverty, 6 Munf. 487. Norton vs. Lewis, 2 Conn. R. 478. Pate vs. McClure, 4 Rand. 164. This last was a 'case where the bill was returned protested, and the drawer, on payment being demanded, promised to pay it; it was held that he could not after-wards resist the payment on the ground that due notice of the' protest had not been given. And such is the case now before the court. Faulkner sent word to the plaintiff, Walker, “ that the bill had been protested for non-payment and sent back, that he did not wish suit to be brought on it, but that he would be up at Little Rock and make arrangements to pay it.” His promise to pay was presumptive evidence of due demand and notice. Breed vs. Hillhouse, 7 Conn. R. 523. Kepplinger vs. Griffiths, 2 Gill and John. 296. There was no error in giving the fourth instruction. The court might even have gone so far as to have charged the jury that the facts stated in the instructions if proven (and they were proven) were sufficient to charge the defendant, Faulkner, in the absence of any subsequent promise to' pay the bill. Bank of Geneva vs. Howlett, 4 Wend. R. 32S. Bank of Utica vs. Philips, 3 Wend. R. 408. The fifth instruction was also properly given. The law fixes' the rate of damages upon “ bills drawn or negotiated in this State,expressed to be for value received, and drawn upon any person and payable in Louisiana” &c., at the rate of “four per centum on the principal sum in such bill,” and the rate of “interest at ten per centum per annum on the amount specified on the bill from the date of protest until payment.” The instruction was in the language of the law itself. The deposition of Lee already referred to could not by any possibility have influenced the verdict. There was sufficient legal evidence to establish fully and completely a right of recovery against the defendant Faulkner, to whom Lee’s deposition alone referred* and therefore the verdict cannot be disturbed, because the deposition was not properly admissible in evidence. The motion in arrest of judgment is wholly Untenable upon the grounds contained in the motion. The 64th section of the 116 th chapter Rev. Stat. provides “'that every person, who may have a cause of action against several persons, and entitled by law to but one satisfaction therefor, may bring suit against all, or as many of them as he may think proper.” This section of the statute is not confined in its application to cases of torts as contended by the counsel for the plaintiffs in error, but is equally applicable to cases arising ex contractu where the plaintiff may have a cause of action against several and is entitled to but one satisfaction therefor. In the enactment of this section of the statute, the legislature certainly did not have in view a remedy alone for causes of action ex delicto, for such was the law before the passage of the act, but they had in view such cases as the one now before the court, in which by the common law or law merchant the plaintiff was bound to proceed against the drawer, acceptor and endorsers by separate actions as to each. The act was intended to make the remedy more simple,, complete and efficacious, and at the same time to save the necessity of a multiplicity of suits in relation to the same subject matter; and. therefore the plaintiff was authorized to bring his joint action against all or as many of them as he may think proper. There is no such conflict between this section and the 10th section of the 20th chapter, Rev. Stat., and thel Ith chapter 9th section, as will prevent all from being operative at the same time. The. 10th section of the 20th chapter, Rev. Stat., gives to the holder of any bill of exchange protested for non-acceptance or non-payment &c. an action at law against the drawer and acceptor or either of them. The 9th section of the 11th chapter gives a joint and several action against all endorsers or assignors, with the original maker, obligor or payor of any instrument in writing assignable by law for the payment of money ,&c.” The first act gives a joint action against all or as many as the plaintiff may see proper to sue, while the last two acts give a right of action against all the parties liable or either of them. It is doubtful whether the language employed in the 10th section of chapter 20 can,by fair construction, be made to confer a joint action, and if it does, there is certainly no such conflict between the several acts upon the subject as will pi’event the operation of all of them. We have not thought it necessary to determine whether the defendants below by moving in arrest of judgment abandoned their exceptions taken at the trial and upon the refusal of the court to grant a new trial. Judgment affirmed. Petition for reconsideration: overruled, Conway B, J. dissenting.