WILSON, Ex'trix, vs. SENIER, impleaded with another.

A negotiable note payable on a day certain, must be presented for payment on the very day it falls due, in order to charge the indorser, unless presentment and notice be waived, or the omission to present it be excused by some accident or other circumstance, not attributable to the fault of the holder, which renders it impossible or unsafe to do so. Sickness of the holder of the note is not an excuse for the failure to present it at the proper time, unless it was not only sudden, but so severe as not only to prevent him from making the presentment and giving notice of non-payment himself, but from employing another person to do it; and then it must be shown that the proper steps were taken as soon as the disability was removed.

Where the holder of a note was seized, about the time it matured, with a sickness which proved mortal, and the note was not presented for payment before his death: *Held*, that if the delay during such sickness were shown to be excusable, the neglect of his executrix for several months, to present the note or give notice of non-payment, discharged the indorser.

The insolvency of the maker of the note does not excuse the holder from giving notice of non-payment to the indorser, although the latter knew of the insolvency at the time of the indorsement.

The fact that the indorser of a note had taken from the maker a mortgage upon a stock of goods to secure its payment, and a mortgage upon all his other personal and real estate to secure other debts due to him, does not dispense with the necessity of a demand and notice of non-payment. Nothing short of a general assignment and actual transfer to the indorser of all the maker's effects, or the receipt by him of money or property for the purpose of satisfying the note, will create such dispensation.

The temporary absence or removal of the indorser from his place of residence or business is no reason why the note should not be presented, nor does it relieve the holder from the responsibility of endeavoring to notify him of the maker's default.

Where the indorser, during his absence in England, left a general agent near his residence in this state, and his post-office address in England was known to the maker of the note: *Held*, 1. That notice served upon such agent, or forwarded by mail to the address of the indorser in England, would have been sufficient. 2. That the holder, if ignorant of the indorser's address in England, was bound to exercise diligence in making inquiry on the subject, and the maker was a proper person of whom to make such inquiry. 3. That if after such inquiry he could not ascertain the facts, then service by leaving the notice at the indorser's last place of abode or business, or by depositing it in the post-office, addressed to him at his last place of residence in this state, would probably have been sufficient.

ERROR to the Circuit Court for *Dane* county.

Action by the executrix of Wilson against McDonald as the maker, and *Senier* as the indorser of a negotiable promissory note, which fell due August 1–3, 1856. The complaint alleged that the note was indorsed by *Senier* to the plaintiff's

testator on the day it became due, or between that day and the 9th of August, 1856 ; that McDonald was then insolvent, as *Senier* well knew, and has continued insolvent ever since ; that immediately after the transfer, the testator was suddenly taken with severe illness, of which he died on the day last mentioned, after having made a will by which he appointed the plaintiff his executrix, to whom letters testamentary were issued October 6, 1856 : that immediately after the issue of said letters, the plaintiff presented the note to McDonald and demanded payment, which was refused; that immediately after the transfer of the note, *Senier* left this state for England, leaving no funds to pay said note, nor making any arrangement with any person to pay it in case of default of payment by the maker, and did not return until about the 1st of April, 1857; that immediately after his return, the plaintiff notified him of the presentment of the note to the maker, and its non-payment, and requested him to pay the same, which he refused. The nature of the defense, and the facts proved on the trial, are stated sufficiently in the opinion of the court. Judgment in the circuit court of non-suit as to the defendant *Senier*.

*Julius T. Clark*, for plaintiff in error, contended that a valid excuse for the non-protest of the note had been alleged and proven, viz. (1). That the holder, just before the note fell due, was suddenly taken sick, of which sickness he soon after died. Edwards on Bills, &c., 649, 458, 392 ; 7 Cow., 707, 714. (2). That the indorser was on his way to Europe at the time the note fell due, so that notice could not be served on him. (3). That the maker was insolvent when the note became due. 2 Coms., 682. (4). That the indorser had a mortgage upon *the whole* of the property, real and personal, of the maker, securing this and other claims, upon which he subsequently took and disposed of the property. Edwards on Bills, 637, 446 ; 3 Kern., 55 ; 15 East, 222 ; 5 Mass., 170 ; 1 Esp., 392 ; 1 Serg. & R., 334.

*J. C. Hopkins*, for defendant in error:

1. The facts stated in the complaint were not sufficient to sustain the action. The default as to demand of payment and notice was not excused by the sickness of the holder (1

June Term, 1861.

WILSON
v.
SENIER.

Kern., 25, 31, and cases there cited; 8 Barb., 396; 12 Johns., 432; 13 id., 47; Chitty on Bills, 401); nor by the absence of the indorser, the maker not having been absent. 2. No facts could be relied upon at the trial to excuse such default, except those mentioned in the complaint. *Garvey vs. Fowler*, 4 Sandf., 665. 3. The attempt to show that the defendant was secured, was a failure; but if not, that did not excuse presentment and demand. *Seacord vs. Miller*, 13 N. Y., 56.

December 11.

*By the Court*, DIXON, C. J. The note on which this action was instituted was payable on a day certain. As to such it is well settled that they must be presented for payment on the *very day they fall due*, and that a delay of *even one day* after the instrument has come to maturity, discharges the parties not primarily liable (Chitty on Bills, 402); unless the delay or omission to present be excused by some accident or other circumstance, not attributable to the fault of the holder, which renders it impossible or unsafe for him to do so (Idem, 385, 391, and 485; *Tunno vs. Lague*, 2 Johns. Cases, 1); or unless presentment and notice have been waived in some of the ways recognized by law. Edw. on Bills, 632 et seq. In respect to such paper, the time within which a demand shall be made and notice given has, by repeated adjudications, been very accurately defined. It is confined within very narrow limits—so narrow, indeed, as hardly to be open to the question of reasonable diligence. Hence the question here presented differs widely from that involved in cases of bills payable after sight, or notes on demand, when the action is brought to charge the drawer or indorser, and the case of *Aymar vs. Beers*, 7 Cowen, 705, cited by counsel for the plaintiff in error, seems quite inapplicable. In such cases the parties, having fixed no time for the presentment of the bill or for the demand of payment of the note, have left it to be governed by the circumstances of the case; and what constitutes reasonable diligence, or such as shall charge the drawer or indorser, which implies that the holder has some latitude of discretion, is a question which cannot be settled by any rule alike applicable to all cases, but must, from its

June Term, 1861.

Wilson
v.
Senier.

nature, be determined by an application of the general principle to the facts attending each particular transaction. It is manifest, therefore, that there are many things that would influence the judgment of the court and be deemed sufficient to excuse delay and inattention in such cases, which could not affect the determination of a case like this, where the holder may be said to have no discretion at all, the time for presentment and notice being specifically fixed by law. In *Aymar vs. Beers*, the sickness of the payee, who was himself to be the bearer of a bill drawn in *New York* upon a firm in *Richmond*, *Virginia*, payable at three days' sight, was held to excuse delay in its presentment; but no case can be found where the *mere* sickness of the holder of a bill or note payable at a time certain, has been held to justify a failure to present it on the day of its maturity. It is is true that the elementary writers, generally, say that the sudden illness or death of the holder or his agent may constitute an excuse for the want of regular notice to any of the parties, provided it be given as soon as possible after the impediment is removed. Edw. on Bills, 392, 458, 649. This is Mr. Chitty's language upon the subject. Chitty on Bills, 360, 485. Mr. Parsons in his Elements of Mercantile Law, p. 119, says: "Death, or severe illness of the notifier or his agent, is an excuse for delay; but the death, bankruptcy or insolvency of the drawee is no excuse." The authorities which he cites will be found, on examination, to relate to the last proposition only, and none of them go to the question of the death or illness of the notifier or his agent. In a note to Mr. Chitty's Treatise, p. 435, it is said that there is no reported case deciding whether *accident* will excuse delay in giving notice of non-acceptance or non-payment. In *Hilton vs. Shepherd*, 6 East, 14, in note, Garrow and Russell contended that if the party was prevented from giving notice within the time named, by a physical impossibility—if he was taken ill, or lost his senses, or was under duress, laches could not be imputed to him. Lord Kenyon said: "I find invincible objections in my own mind to consider that the rule of law requiring due diligence, is tied down to the next day." From these and other similar expressions to be found in the

books, there can be little doubt that cases may arise when the death or illness of the holder or his agent will excuse; but to do so they would undoubtedly be required to come strictly within the rule laid down by Mr. CHITTY; the illness must not only be shown to have been sudden, but likewise so severe as to have prevented the owner or agent from employing another person to make the presentment or give the notice, as well as to have precluded the possibility of his doing so himself; and then it must be shown that the proper steps were taken as soon as the disability was removed.

Applying these principles to the present case, it will be very readily perceived that the facts disclosed by the record constitute no valid excuse for the omission of the plaintiff's testator to present the note and give notice of its non-payment on the day it became due; nor for the subsequent neglect of the plaintiff to do so in case the testator had been lawfully excused. The note matured on the 3d day of August, 1856. The complaint alleges that either on that day or between that day and the 9th day of the same month, the defendant indorsed and delivered it to the testator, who became the legal owner and holder, and that immediately after the transfer he was suddenly taken with severe illness, of which he died on the last named day, after having made a will, &c. The defendant answers that the transfer was made on the 23d day of July, and the plaintiff's witness McDonald, who was the maker of the note, clearly disproves the allegations of the complaint. He testifies that before the note was due, the deceased came to him and told him that he should want things from his store and that ·he would not press him, and that after the transfer and before maturity, he sold the deceased goods which were applied upon it. The precise time when Mr. Wilson was taken sick is not fixed by the testimony. Thus by comparing the allegations of the complaint with the proofs, it does not appear that he was not in perfect health on the day the note became due, and that he might not have presented it for payment, and given notice to the defendant in case it had been refused. But conceding that it is shown that he was sick, still it is not shown that he was so sick as to be incapable, at that time, of at-

tending to his worldly affairs. The complaint avers that he made a will, which was afterwards proved, and the inference must be that he did so during the period of his illness.

Again, if nothing was lost by the testator's omission, still it seems clear that the subsequent neglect of the plaintiff has discharged the defendant. For if it be admitted that she might have presented the note and given notice of non-payment even after probate of the will and the issuing of letters testamentary to her, it is not shown that she used due diligence, or any diligence at all in that respect. The rule laid down by Mr. CHITTY is, that notice must be given as soon as *possible* after the impediment is removed. The witness McDonald testified that she asked him for the money on the note sometime between August, 1856, and February, 1857, the exact time he does not remember; and it is not pretended that she ever gave or attempted to give the defendant any notice whatever until after his return from England, about April, 1857. So far as the circumstance of sickness is concerned, however it may have been, this is a complete answer to it, and shows that no advantage can now be taken of it as an apology for the want of present-ment and notice.

The excuses that the defendant was on his way to Europe at the time the note became due, so that notice could not be served on him, and that McDonald, the maker, was then insolvent, are clearly no better. The temporary absence or removal of the indorser from his place of residence or business is no reason why the note should not be presented; nor does it relieve the holder from the responsibility of endeavoring to notify him of the maker's default. After present-ment and default the giving of notice is a question of diligence on the part of the holder, and if he exercises proper care and prudence for that purpose, the indorser will not be exonerated, even though he does not receive actual notice. In case of the temporary removal of the indorser, notice put into the keyhole of the outer door of his dwelling house, which was found fastened up, has been held sufficient. *Stewart vs. Eden*, 2 Caines' R., 121. A deposit of notice in the post office addressed to the indorser, has, under like cir-

VOL. XIV—25

June Term,
1861.

WILSON
v.
SENIER.

cumstances, been decided to be good. *Ogden vs. Cowley*, 2 Johns. R., 274. If the residence or address of the indorser be unknown, the holder must show that he has used proper diligence to find it out, by inquiring of persons likely to know, and who have no interest in misleading him; and if he act upon information thus obtained, though it be not correct in fact, the notice will be good. *Chapman vs. Lipscombe*, 1 Johns. R., 294; 16 id., 218; 5 Wend., 587; 21 id., 643; 2 Hill, 587; 1 Gray, 175; 40 N. H., 506; 3 Coms., 442; 2 Sandf., 176; 7 How. (Miss.), 294. It appears that the post office in England at which the defendant received his letters during his absence, was well known to McDonald, who was a person to whom the plaintiff or her testator might properly have applied for information upon that subject. It also appears that the defendant left a general agent residing near by, a fact which would have been very likely to have become known if inquiry had been made. Under such circumstances service upon the agent, or by forwarding the notice by mail addressed to the defendant in England, would undoubtedly have been good; and if those could not have been ascertained, then service by leaving notice at his last place of abode or business, or by depositing it in the post office, addressed to him at his place of residence in the state, would probably have been sufficient.

As to insolvency, it has long been settled that it does not discharge the holder from giving notice, though the maker be insolvent at the time of indorsement and that be known to the indorser. *Jackson vs. Richards*, 2 Caines, 343; *Nicholson vs. Gouthit*, 2 H. Black., 609; *Barton vs. Baker*, 1 Serg. & Rawle, 334; *Bank vs. Griswold*, 7 Wend., 165; *Lawrence vs. Langley*, 14 N. H., 70; *Boultbee vs. Stubbs*, 18 Vesey, 20; *Esdaile vs. Sowerby*, 11 East, 114.

The only remaining question is, whether the defendant's having taken security for the payment of this, among other debts, by mortgage upon all of McDonald's property, real and personal, dispensed with a demand and notice. The authorities are uniform that the mere precaution by an indorser of taking security from his principal, does not so operate. Nothing short of a general assignment and actual transfer to

June Term,
1861.

WILSON
v.
SENIER.

the indorser of all the maker's effects, or the receipt of money or property by him for the purpose of satisfying the debt and with an understanding that he is to do so, in which case he changes place with the maker and becomes himself the principal, has ever been held to create such dispensation, and the disposition of the courts has been to restrict rather than enlarge the doctrine. In *Corney vs. Da Costa*, 1 Esp. R. 302; *Bond vs. Farnham*, 5 Mass., 170; *Barton vs. Baker*, 1 Serg. & Rawle, 334; and *The Bank vs. Griswold*, 7 Wend., 165, such transfers were held to excuse the want of demand and notice, and the indorsers were charged because they had taken into their possession the whole estates of the makers expressly to meet their responsibilities, and had thus secured every object which the law presumes would be the consequence of notice of default. See also *Leffingwell vs. White*, 1 Johns. Cases, 99; *Duvall vs. The Bank*, 9 Gill & J., 31; *Lewis vs. Kramer*, 3 Md. R., 265; *Mead vs. Small*, 2 Greenl., 109. The taking of security from the maker has been held not to dispense with the necessity of presentment and notice in the following cases: *Spencer vs. Harvey*, 17 Wend., 489; *Seacord vs. Miller*, 3 Kern., 55; *Kramer vs. Sandford*, 4 Watts & Serg., 328. The last named case contains a full and able discussion of the question and review of the authorities by Chief Justice GIBSON, and the conclusion reached by the court was, that the test consists in determining upon whom is the obligation to take up the note. If that remains with the maker, the indorser is entitled to notice; but if it has devolved on the indorser himself, he needs none. With the correctness of this conclusion we are quite satisfied. But if the acceptance of security can in any case be held a waiver of notice, it seems to us that the reasoning of the learned judge shows very plainly that it ought not to be in this. He says that notice may be necessary to make the very security available on which the indorser is supposed to have relied, but which he may have reserved for the critical moment. This was emphatically true of the security for the note in question. It was of the most precarious and uncertain kind—a chattel mortgage upon a stock of goods, the preservation of which demanded constant care and watchfulness

on the part of the mortgagee. It became valueless as a security as against creditors, purchasers or mortgagees in good faith, after the expiration of one year from the time it was filed, unless renewed by the affidavit of the mortgagee, his agent or attorney, in the manner prescribed by the statute. Whatever, therefore, might be deemed the effect of accepting security of a more permanent and unchangeable character, the taking of such as this clearly should not be considered a substitute for notice.

For these reasons we are of opinion that the decision of the court below was correct, and that the judgment must be affirmed.

Ordered accordingly.