## BANK OF UTICA *vs.* DAVIDSON.

*Notice of protest*, sent to a town where a note bore *date*, where the officers of the bank were told by the person who presented it for discount the endorser resided, and where in fact he did reside until a few weeks previous to the date of the note, was *held* sufficient to charge the endorser.

THIS was an action of assumpsit against the *endorser* of a promissory note for $350, dated at *South Bainbridge*, 29th June, 1827. The note was made in *renewal* of a previous note, endorsed by the defendant for the accommodation of the same maker. When it was presented for discount by the agent of the maker, he informed a clerk in the bank that the defendant and two other endorsers resided in *Bainbridge*, of which the clerk, in conformity to the uniform custom of the bank, made a memorandum. When due, it was protested, and notice of protest sent per mail, directed to the defendant at *Bainbridge*, Chenango county. The defendant

had resided in Bainbridge, but on 12th May, 1827, he had removed to *Masonville*, in Delaware county, in which town there was a post-office, within ¾ of a mile of his residence. *Bainbridge* is 12 or 14 miles from Masonville. There is but one town called Bainbridge in Chenango county; a part of it is called *South Bainbridge*. A verdict was taken for the plaintiffs, subject to the opinion of the court on the sufficiency of the notice of protest.

*S. Beardsley*, for plaintiffs.

*J. A. Spencer*, for defendant.

*By the Court*, SUTHERLAND, J. The only question in this case is whether sufficient notice of the dishonor of the note on which the suit is brought was given to the defendant to charge him as endorser, which resolves itself into the inquiry whether due diligence on the part of the plaintiff was shewn to ascertain the residence of the defendant.

If the holder of a note is ignorant of the place where the endorser resides, and cannot ascertain it after diligent inquiry, notice sent to the place where the note bears date will be sufficient. If no place appears on the face of the note, notice must be sent to the place where, according to the best information to be obtained, the endorser will most probably be found. In *Chapman* v. *Lipscombe & Powell*, 1 *Johns. R.* 294, the bill was dated at New-York and was drawn on a house in that city and accepted. The drawers in fact resided at *Petersburgh* in Virginia. The bill not having been paid at maturity, inquiries were made at the banks and elsewhere after the defendants, and the information received was that they resided at *Norfolk*. The notary put two notices in the post-office, one directed to the defendants at *New-York*, and the other directed to them at *Norfolk in Virginia*. This was held sufficient. In *The Bank of Utica* v. *Demott*, 13 *Johns. R.* 432, it did not appear at what place the note was made; the clerk of the bank stated, that from the best information he could get, he supposed the defendant resided at *Canandaigua*, and accordingly directed his notice there; that he inquired of the cashier and some of the directors as

to the defendant's residence.  The defendant in fact resided
at *Ovid, in Seneca county*, and had resided there for 10 years.
The maker also lived there when the note was given.  The
court observe, in this case, that "*with ordinary diligence* the
place of the defendant's abode might have been ascertained.
He had a permanent residence for 10 years at Ovid, and the
inquiry respecting him was very limited."  I infer from these
observations that no inquiry was made except of the officers
of the bank, and that when the notary said that from the best
information he could get he believed the defendant resided
at Canandaigua, he was understood to have sought informa-
tion from no other quarter.  It is upon this construction only
that the observation of the court can be justified : that with
ordinary diligence the defendant's residence might have been
ascertained.  If the inquiry were confined to the officers of
the bank, under such circumstances it was a clear case of
*laches*.  2 *Campb.* 461.  12 *East*, 433.  3 *Esp.* 240.  2 *Maule
& Sel.* 49.  *Chitty on Bills*, *275, notes*.

In the case now before us, the individual of whom the in-
quiry was made stood ostensibly in a relation to the parties
to the note, which authorized a belief that he was acquainted
with their residence, and justified the clerk of the bank in
relying upon his information.  He was the agent of the ma-
ker in presenting the note to the bank.  I do not mean to say
that he was an agent in any sense that would make his dec-
larations or representations binding upon any of the parties to
the note ; but the fact of his being the bearer of the note to
the bank, was presumptive evidence of some sort of inter-
course or connection with the parties which would enable him
to answer the inquiry as to their residence.  There is no ev-
idence in the case that the defendant was in the habit of
doing business at *Utica ;* that he knew or was known to an
individual there.  There is nothing from which it can be in-
ferred that more accurate information might have been ob-
tained.  It is to be remarked, too, that the information re-
ceived coincided with the presumption arising from the face
of the note ; it was dated at *Bainbridge*.  Besides, the de-
fendant had in fact resided at Bainbridge, until within a few
weeks preceding that time.  He had not as in the case of

*The Bank of Utica* v. *Demott*, had a permanent residence for years at another place; his removal was so recent as to render it improbable that it would be known at a place so remote as Utica at the time when the note fell due. On the whole I am inclined to think that due diligence was shown, and that the notice was therefore sufficient.

I do not understand any objection to be taken on the ground that the notice was directed to *Bainbridge* instead of "South Bainbridge." It is all one town, and it does not appear that it has more than one post office. The omission of the particular part of the town was therefore not material.

Judgment for plaintiffs.