Bank of Utica v. Bender.

### BANK OF UTICA *vs.* BENDER.

Notice of non-payment sent per mail to the *place* designated by the *drawer* of
an accommodation bill of exchange, for whose benefit the bill was discount-
ed, as the *residence of the endorser*, is sufficient to charge the endorser, al-
though he in fact reside in another town, and receives his papers at a pos
office in still another town.

All that can be required of the holder of paper in such case is, *reasonable dili-
gence*, in making inquiry as to the residence of the endorser; and the holder
in this case having received information from an individual in whom the en-
dorser reposed so much confidence as to become his surety for the payment
of a debt, *it was held*, that he had done all that could be demanded of him.

What is *reasonable diligence* in cases of this kind, where there is no dispute
as to the facts of the case, is a *question of law*.

THIS was an action of *assumpsit*, tried at the Oneida cir-
cuit in October, 1838, before the Hon. PHILO GRIDLEY, one
of the circuit judges.

The action was against the defendant as *endorser* of a
bill of exchange for $1000, dated at *Chittenango*, February
27th, 1838, drawn by Henry H. Cobb, on Sanford Cobb of
Albany, and payable to the order of the defendant, at the
Commercial Bank of Albany, four months after date. The
defendant was an accommodation endorser, and the draft
was discounted by the plaintiffs for the benefit of the
drawer. Under the defendant's name as endorser, was

written *Chittenango*, and notice of demand and non-payment of the draft was sent by mail, directed to the defendant, at that place. The defendant resided at the time, and had for twenty years before, in the town of *Manlius*, and he received his letters and papers at the *Hartsville* post office, which is in that town. Hartsville is three miles west of Chittenango, and the defendant lives a mile and a half south from Hartsville, and three miles from Chittenango. Cobb, the drawer, had, before his failure, done a good deal of business with the plaintiffs. The usual custom at the bank was, to inquire of the person presenting paper for discount, the residence of the endorser, and to note it down in pencil, under his name, and this custom was well understood by Cobb, the drawer. The word *Chittenango*, under the defendant's name on this draft, was in the hand-writing of Cobb, the drawer. The plaintiffs did not know the defendant, nor where he lived; no inquiry as to his residence was made at the time the draft was protested, because *Chittenango* had been written by the drawer under the defendant's name. The judge held the evidence sufficient to charge the defendant as endorser, and directed the jury to find a verdict for the plaintiffs. Exception, and verdict for plaintiffs.

*J. A. Spencer*, for defendant.

*W. C. Noyes*, for plaintiffs.

*By the Court*, BRONSON, J. When the facts are all ascertained, what is reasonable diligence is a question of law. "This results," said Spencer, J. in *Bryden* v. *Bryden*, 11 Johns. R. 187, "from the necessity of having some fixed legal standard, by which men may not only know the law, but be protected by it." Bayley on Bills, 142, 144, and notes. The judge was not requested to submit the question of due diligence to the jury; but had it been otherwise, he was right in treating it as a question of law, there being no dispute about the facts.

Was there reasonable diligence in endeavoring to ascertain the place to which the notice should be directed? Not

knowing where the defendant lived, the plaintiffs inquired of the drawer, for whose accommodation the bill was discounted, and relying upon the information given by him, they sent the notice to *Chittenango*, when it should have been sent to *Manlius* or *Hartsville*. This is not like the case of the *Catskill Bank* v. *Stall*, 15 Wendell, 364, affirmed in error, 18 id. 466; for there the person who took the note to the bank, and gave the information on which the notice was misdirected, was the *agent of the endorsers*, and they had no right to complain that credit had been given to what was, in effect their own representation.

But I am unable to distinguish this from the case of the *Bank of Utica* v. *Davidson*, 5 Wendell, 587. This was an action against the endorser of a note which had been discounted for the accommodation of the maker, and the notice of protest was sent to *Bainbridge*, when it should have been sent to *Masonville*, where the endorser lived. The person who took the note to the bank, and gave the information on which the plaintiffs acted, was the *agent of the maker*, and it was held that there had been due diligence, and judgment was rendered for the plaintiffs. Sutherland, justice, mentions the fact that the note was *dated* at Bainbridge, where the notice was sent, and that the endorser had but recently removed from that place; but the case was put mainly on the ground, that the plaintiffs had a right to rely on the information given by the agent of the maker when the note was discounted. In the case at bar, notice was directed to the place where the bill purports to have been *drawn*; and the only difference between this and the case of the *Bank of Utica* v. *Davidson*, consists in the single fact, that the endorser of this bill had never lived at Chittenango. That does not, I think, furnish a sufficient ground for a solid distinction between the two cases.

How does the question stand upon principle? It is not absolutely necessary that notice should be brought home to the endorser, nor even that it should be directed to the place of his residence. It is enough that the holder of a bill make diligent inquiry for the endorser, and acts upon the best information he is able to procure. If after doing

so, the notice fail to reach the endorser, the misfortune falls on him, not on the holder.   There must be ordinary or reasonable diligence—such as men of business usually exercise when their interest depends upon obtaining correct information.   The holder must act in good faith, and not give credit to doubtful intelligence when better could have been obtained.

Now, what was done in this case?   The plaintiffs inquired of Cobb, the drawer of the bill, who would of course be likely to know where his accommodation endorser lived. They saw that the defendant, by lending his name, had evinced his confidence in the integrity of the drawer; and so far as appears, nothing had then occurred which should have led the plaintiffs, or any prudent man, to distrust the accuracy of Cobb's statements concerning any matter of fact within his knowledge.   He professed to be able to give the desired information, and his answer was unequivocal. If Cobb was worthy of being believed, there was no reason for doubt that the endorser resided at Chittenango. The plaintiffs confided in the information, and acted upon it.

But it is said that Cobb had an interest in giving false information for the purpose of protecting his accommodation endorser, and consequently that the plaintiffs should not have trusted to his statement.   He certainly had no legal interest in the question.   If the bill was not accepted and paid by the drawee, Cobb, as the drawer, was bound to pay and take it up from the holder; and if the endorser was charged, Cobb was bound to see him indemnified.   In a legal point of view, it was wholly a matter of indifference to him whether notice of the dishonor of the bill should be brought home to the endorser or not.   Before any thing can be made out of the objection, we must say that the plaintiffs were bound to suspect that Cobb, when he presented the bill, intended to commit a fraud; that he was obtaining a discount upon a draft which he knew would not be paid, either by the drawee or by himself; that the money was to be lost to some one, and that he preferred the loss should fall on the holder rather than the endorser; and consequently, that he would give false information concerning the proper place for directing notice.   It is quite evi-

dent that the plaintiffs entertained no such suspicion ; for if they had, they would neither have confided in the statements of Cobb, nor would they have loaned him the money. I think they were not bound to believe that a fraud was intended. There was nothing in the circumstances of the case calculated to induce such a belief in the mind of any man of ordinary prudence and foresight. This was an every day business transaction, where men must of necessity repose a reasonable degree of confidence in each other, and no one can be chargeable with a want of diligence for trusting to information which would usually be deemed satisfactory among business men. If there was any ground whatever for suspecting fraud on the part of Cobb, it was, to say the least, very slight, and was fully counterbalanced by the fact, that the defendant had testified his confidence in Cobb by lending his name as endorser. The plaintiffs have, I think, lost nothing by trusting to information derived from the drawer of the bill, instead of seeking it from some other individual.

The case then comes to this. The plaintiffs applied for information to a man worthy of belief, and who was likely to know where the endorser lived. They received such an answer as left no reasonable ground for doubt that Chittenango was the place to which the notice should be sent. I think they were not bound to push the inquiry further. Men of business usually act upon such information. They buy and sell, and do other things affecting their interest, upon the credit which they give to the declarations of a single individual concerning a particular fact of this kind within his knowledge. This is matter of common experience. Ordinary diligence in a case like this can mean no more than that the inquiry shall be pursued until it is satisfactorily answered. This is the only practical rule. If the holder of a bill is required to go further, it is impossible to say where he can safely stop. Would it be enough to inquire of two, three or four individuals, or must he seek intelligence from every man in the place likely to know any thing about the matter ? It would be difficult, if not impossible, to answer this question.

New trial denied.