Mr. Chief Justice Shaekey
delivered the opinion of the court.
On the 16th of September, 1842, Mrs. Mary A. Pugh conveyed certain property in trust to secure a debt due to the Union Bank of Tennessee, and the object of the hill in this case is to have the deed cancelled, and to be relieved from the debt secured by it.
The history of the debt is this : — On the 19th day of October, 1837, a note made by A. R. Govan, indorsed by Mrs< Pugh and others, for $9228, was discounted by the bank. It fell due on the 23d of February, 1838. On the 20th of that month, Govan, the maker, made a payment which reduced the amount to $6450, and then gave a new note for that sum with the same indorsers, payable in twelve months. The maker and first indorser, Mrs. Pugh, resided at Somerville, Tennessee, when the original note was given, and at the time of its discount. Mrs. Pugh removed to Marshall county, in this state, some time in 1837, and on the 21st of February, 1842, suit was instituted against her in the circuit court of Marshall county. By giving the deed of trust, she obtained further time for the payment of the debt, and the suit against her was dismissed. The grounds relied on for avoiding the deed of trust are two; first, that she received no notice of the non-payment of the note by Govan, notice of non-payment having been improperly directed to her at Somerville, after she had removed to Mississippi ; and second, that the bank had sued Govan in Tennessee on the note; had recovered judgment, and had given such a stay of execution as discharged the indorsers, of which facts she was not apprized when the deed of trust was executed.
On the first point the case cannot admit of a doubt. It does not necessarily follow, that if the notice was insufficient, that it would be good ground for avoiding this deed of trust. It is a subsequent agreement, entered into with great solemnity, and would furnish a strong case for a presumption that notice had been received, or if not received, that it was waived by the *342 subsequent promise. See Robins et al. v. Pinckard, 5 S. & M. 51. We shall not consider it, however, in this point of view, since we are satisfied the notice was sufficient. This note was made in renewal of a former note, due 23d of February, 1838. At the time of making, and at the time of discounting the original note, the parties resided at Somerville, and that fact was known to the bank. They had been credited as citizens of that place. The renewal was made under precisely similar circumstances, except that a change of residence took place shortly before the last note was made; the time is not precisely stated. The renewal is but a part of the original transaction, and the bank must be presumed to have renewed with a view to the same state of things. If Mrs. Pugh had, in the intermediate time, changed her domicil, it was her duty to have given information of that fact, inasmuch as she was entitled to notice of non-payment, so that she might protect herself.
Judge Story thus lays down the principle where a change of domicil has taken place. “ If the party has changed his domi-cil after he became a 'party to the bill, and his removal is known, notice should be sent to him at his new place of domi-cil, if known, or if, by reasonable diligence and inquiry, it can be ascertained.” Story on Bills, 356, sec. 297. The rule requiring notice to be sent to the new place of residence, or diligence to be used to ascertain it, presupposes a knowledge on the part of the holder that the indorser has removed. Without such knowledge there is no foundation for the exercise of diligence. The bank having transacted business with Mrs. Pugh whilst she resided at Somerville, some two hundred miles from the location of the bank, had no right, in a continuation of the original transaction, to presume that she had changed her domicil.
This case does not differ from the case of the Bank of Utica v. Davidson, 5 Wendell, 587. There the note was given in renewal. One of the indorsers had changed his reside n shortly before the date of the last note, but the bank not being aware of this, sent notice to the place where he had resided when the first note was made, and it was held sufficient.
*343 Our conclusion is also fully sustained by the case of the Bank of Utica v. Phillips, 3 Wend. 408. In that case the indorser had removed after the note was made, but notice sent to the place of his former residence was held sufficient, because the holders had no reason to expect such an event, and no considerations of diligence could have prompted them to institute such an inquiry. The court say, where the place of an indorser’s residence is established at the time when a note haviug the usual time of bankable paper to run, is discounted, and is at such a distance from the place of payment as to repel the presumption that a removal (in case it happens before the note falls due,) would come to the knowledge of the holders, and no actual knowledge is brought home to them, a notice of demand and non-payment, directed to such place of residence, is sufficient.”
The case of McMurtrie v. Jones, 3 Wash. C. C. Rep. 206, was of a similar character. The indorser had removed before the maturity of the note, and notice left at his former boarding house was held sufficient.
The principle of these cases is, that where a party is contracted with or trusted, and is known at the time to reside at a particular place, the party has a right to act upon the presumption, in reference to all matters connected with the same transaction, that he continues to reside there, unless such presumption is rebutted by circumstances calculated to show that the party knew of the removal of his debtor. Any other rule would be fatal to the credit of negotiable paper.
But the case admits of this further remark. The question of diligence is not raised in this inquiry. It may be that proper diligence was used, even admitting that it was necessary. It does not follow, even in cases where the law requires the holder of negotiable paper to make inquiry as to the residence of the indorser, that every misdirection of notice will discharge the indorser.
In the next place, was Mrs. Pugh, as indorser, discharged because of the stay of execution given on the judgment against Govan in Tennessee?
*344 The first stay of execution relied on is one which was given when the judgment was rendered. It follows the judgment in these words : “ and the defendant agrees to stay said execution until the first of May, 1840.” The bill alleges that this was an agreement made by the plaintiff’s attorney, and not by the defendant as it was entered. It does not appear to have been made on consideration, or to be binding on any party. If, in the extent and nature of the argument, it was a mere voluntary offer, it was no discharge of the surety ; and, to test its validity, suppose execution had been sued out before that time, would any court have set it aside as irregular?
In the next place, after execution issued, the plaintiff’s attorney wrote a note to the sheriff in the following words : “ You will hold up the execution against A. R. Govan in favor of the Union Bank till you hear from me again.” The decisions of this court are conclusive on this point. This direction given to the sheriff is almost identical with that which was given in the case of Newell & Pierce v. Hamer, 4 Howard, 684, which was held not to discharge a surety. This case is weaker than that in one point of view. There, the order was given by the plaintiff; here, it is given by the plaintiff’s attorney. The principle there settled was, that an agreement which will discharge the surety, must be positive and binding, based upon a valuable consideration, sufficient to tie up and restrain the'creditor during the time for which the indulgence was given. The same principle has been reasserted in all the subsequent cases where the question has been raised. Payne v. Commercial Bank of Natchez, 6 S. & M. 24; Montgomery v. Dillingham, 3 Ibid. 647; Johnson v. Planters' Bank, 4 Ibid. 165; Wadlington v. Gary, 7 Ibid. 522. Neither of these agreements was founded on any new or valuable consideration, nor were they such as could be enforced in a court of justice.
But we cannot admit that, if these directions or agreements could be considered binding, the attorney had any power which would enable him to jeopardize the rights of his client. It appears very clearly in proof, that no such authority was given to the attorney by the plaintiff, and the authorities are very clear *345 that he has no such power unless it is expressly given. It is in direct violation of principle. Clark v. Kingsland, 1 S. & M. 248; Dunn v. Newman, 7 How. 582; Garvin v. Lowry, 7 S. & M. 24; 10 Johns. 220; 1 Pick. 347.
The complainant therefore fails on both grounds taken, to show that the claim to relief is well founded. We shall not enter into an investigation of the question, as to how far the giving of the deed of trust was a waiver of any previous irregularity, as it is not necessary that we should decide that point.
Decree reversed, and bill dismissed.
Mr. Justice Clayton, having been counsel in the court below, gave no opinion.