By the Court. Sandford, J.
The defendant as the drawer of this bill, was entitled to notice of its non-acceptance, unless some cause existed which made it unnecessary for the holder to give him such notice. The plaintiff claimed, that the drawer had no reason to expect that the bill would be accepted or paid, and therefore he was not entitled to notice. This question was submitted to the jury on the testimony ; and it is contended by the defendant, that there was not sufficient testimony against him to warrant the judge in leaving it to the jury.
We have considered the point, and having regard to the circumstance that the burthen of proof was upon the plaintiff, we are satisfied that the evidence against his position was altogether too strong to warrant a finding in his favor. The verdict on the question is so clearly against evidence, that we must lay it aside in disposing of the case.
Independent of this ground, upon which the plaintiff sought to excuse the omission to give notice, he claims to recover on the sufficiency of the notice which was actually given. This notice was sufficient in form, and 'sent at the proper time; but it was sent to Washington City, and the defendant’s residence was in New Orleans.
*175 We do not think the usage relied upon, can aid the plaintiff. The bill was drawn at Washington, as it disclosed on its face. Hence, the law of that place governs as to the mode and place of the notice to be given to the drawer. (Story on Bills, § 391, and the previous sections there referred to.)
It is said, however, that the notary used due diligence to discover the defendant’s residence, and he sent the notice to the latter according to the best of his knowledge. The notary testifies, that at the time of the protest, he made diligent inquiry as to where the drawer then resided, and to the best of his knowledge and belief, the defendant then resided at Washington, and was there at the time ; and that, the notary says, was his reputed place of residence. On the other hand, he says he has known the defendant six or seven years, and in December before this occurrence, entered a notarial act describing him as residing in New Orleans. The subsequent notarial act in May, has no bearing upon the question of his diligence in March. The defendant, for some years had been a counsellor at law in New Orleans, but had been absent over two months at Washington on professional business.
The point is undoubtedly, whether the notary made diligent inquiry; because if he did, his miscarriage is not to deprive the holder of the bill of his claim against the drawer. We do not consider the notarial act in December, 1845, as of much weight in the case. The frequency of those official duties in a large city where the laws are of French origin, must in general, preclude the recollection of individual instances. Our officers who certify the acknowledgment of conveyances, necessarily read the residence of the grantor in ascertaining the identity to which they certify. Yet it would be contrary to reason and experience, to presume that after the lapse of two months, they would recollect the description of such residence, in any given instance.
The fact of the defendant’s residence in New Orleans, and his professional standing, are met by his actual absence at the time, and by the notary’s inquiry and its results. It is not proved that the defendant’s name was in the directory, or that he had an office or place of business, or any other fact, which *176 is inconsistent with the testimony of the notary, as to his knowledge and belief respecting the defendant’s residence, after diligent inquiry.
After a full consideration of the subject, we have no doubt that the proof shows reasonable diligence in the notary, to make the notice effectual.
The established principle is, that if the notary inquire of persons likely to know the residence, and having no interest to state it erroneously, and acts on the information thus acquired; it suffices, although it be wrong. A reference to a few of the decisions in this state, will illustrate the law as now established.
In Chapman v. Lipscomb, (1 Johns. R. 294,) a bill was drawn and dated in New York, on a firm residing there, by the defendants, residing in Petersburgh, Virginia. On payment being refused, the clerk of the notary made diligent inquiry after the defendants, at the banks in New York and elsewhere, and the information was, that they resided at Norfolk, and he sent notices addressed to them at that place. It was held, that due diligence had been used, and that the notice was sufficient.
In Reid v. Payne, (16 Johns. 218,) the notary, after demanding payment of a note, on inquiry as to the residence of the indorser, was informed that he lived in Greenbush, and notice was sent to him at that place. In fact, he lived in an adjoining town, five miles distant from the post-office in G. It was held, that sufficient diligence was proved.
In the Bank of Utica v. Davidson, (5 Wend. 587,) the note protested was dated at South Bainbridge. When it was' presented for discount, by the agent of the maker, he informed a clerk in the bank that the indorser resided in Bainbridge, of which the clerk made a memorandum. The notice of protest was sent by mail, directed to the indorser at Bainbridge. The indorser resided in Masonville, twelve or fourteen miles distant. He had resided in Bainbridge until a short time before the note was made. The court held, that due diligence was shown, and that the notice was sufficient.
The Bank of Utica v. Bender, (21 Wend. 643,) was like the case.last cited, except that the information was given by the *177 drawer of the bill for whose benefit it was discounted, and the indorser had never resided at the place to which notice was sent. The notice was adjudged to be sufficient, and the decision was affirmed in June, 1841, by the court for the correction of errors.
In Ransom v. Mack, (2 Hill, 587,) the notary being ignorant of the residence of the defendant, the first indorser, applied for information to the second indorser, and was told to send the notice for the former to North Adams. The defendant did not reside at that place, or in the town, but received his letters at another post-office in the town of Adams. The court held, that the notary was well warranted in acting on the information thus obtained, and that there was due diligence.
Many other cases are referred to in Story on Bills, § 351, note 4, and the law appears to be uniform in almost every state in the Union. The cases of Preston v. Daysson, (7 Louis. R. 7, by Curry,) and Vigers v. Carlon, (14 ibid. 89,) show that the rule prevails in Louisiana. On the authority of the latter, which in its circumstances is quite similar to the one before us, the diligence proved here would.be held sufficient in that state. The rule of law thus established is founded in good sense, and a due regard to the rights of all parties, and applied to the testimony before us, entitles the plaintiff to recover.
Judgment for the plaintiff.(a)

 Affirmed in the Court of Appeals, April 17th, 1850.