[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 237 
In order to charge the indorser of commercial paper, notice of its dishonor, in cases where a notice is necessary, must be given by the holder thereof, or by some one of the parties thereto. Notice by a stranger is not sufficient. (Chitty on Bills, 8thAm. from 8th London ed., 526 to 529; Story on PromissoryNotes, §§ 301 to 307; Chanoine *Page 238 
v. Fowler, 3 Wend., 173; Sewall v. Russell, id., 276.) An agent of the holder or other party may give the notice; but in doing so he represents and acts on behalf of his principal, and that, too, although he may be a notary and act in his official character. If the residence of the indorser is known, or by the exercise of due diligence can be ascertained, he is entitled to notice.
In this case, the referee has found that the notary into whose hands the note in suit was placed, with directions to demand payment of the maker and give the notice, did not know the residence of the indorser, and, so far as he was concerned, and as between him and his principal, had made all necessary inquiries to ascertain it. But it was the holder of whom the law requires diligence; and, if he knew the residence of the indorser, the latter was entitled to notice. The referee has not found, and there is nothing in the case showing affirmatively, that the residence of the indorser was in fact known to the plaintiff, the holder of the note; and it is claimed by his counsel that there is no presumption that he had such knowledge. As there is no other indorser of the note than Miller, the plaintiff must have been his immediate indorsee. The complaint so avers, and the legal presumption is that the paper was transferred by the defendant to the plaintiff; and if such was the fact he must have known the defendant, and it is to be inferred that he knew the defendant's place of residence. If, when he purchased the note, he did not know, he should then have made the inquiry, and it must be presumed that he did so. If the defendant was an accommodation indorser, and the note was in fact transferred by the maker to the plaintiff, he then should have inquired of the maker as to the residence of the indorser. InAnderson v. Drake (14 John., 114), Chief Justice THOMPSON, in speaking of the diligence required of the holder of commercial paper to charge the indorser, says: "Whoever takes such a note is presumed to have made inquiry for the residence of the maker, in order to know *Page 239 
where to demand payment, and to assume upon himself all the inconvenience of making such demand and the risk of the maker's removing to any other place before the note falls due." The same diligence is required of the holder in finding the maker of paper not payable at any particular place, to make demand of payment, as in finding the indorser, to give notice of demand and non-payment, and no greater or different. Consequently, the remarks made by the distinguished chief justice are strictly applicable to this case. I think the legal presumption is that the plaintiff did know the residence of the indorser; and, if he did, it was clearly his duty to impart the information to the notary. He was guilty of laches in not doing so.
But it is claimed that it was impossible for the plaintiff to show his want of knowledge; that he could not prove a negative. The general rule of law is, that notice must be given to the indorser. Cases where it need not be given form exceptions to the general rule, and the plaintiff was bound to show that his case came within some of the exceptions, in order to excuse the want of notice. The evidence thereof was within his power. As above suggested, he should have imparted to the notary what information he had on the subject. If he did not know the indorser's residence, he should have instructed the notary where to make inquiries, and who to call upon for information, and especially should have directed him to the maker of the note, and informed him where the maker could be found. It would have been competent, upon the trial, to prove the instructions thus given as a part of the res gestæ, as tending to show what degree of diligence was used, and thus prima facie evidence of the plaintiff's knowledge on the subject would have been furnished.
It appears, affirmatively, that no instructions were given by the plaintiff to the notary relative to service of notice, or information communicated to enable him to give the notice, as the referee has found that the latter called at the place of *Page 240 
business of the former for the purpose of obtaining information, and did not succeed in finding him.
But upon the supposition that the residence of the defendant was unknown to the plaintiff, inquiry should have been made of the makers. Due diligence required that this should be done. (Chitty on Bills, 8th Am. from 8th London ed., 525; Bankof Utica v. Davidson, 5 Wend., 587; Same v. Bender, 21id., 643; Same v. De Mott, 13 John., 432; Catskill Bank
v. Stall, 15 Wend., 364; Lowry v. Scott, 24 id., 358;Bayley on Bills, 280-283, ch. 7, § 2, 5th ed.) It does not appear where the maker resided; but the fact that the note was dated and payable in the city of New-York is some evidence that he resided there, although no evidence of the residence of the indorser. (Lowry v. Scott, 24 Wend., 358; Spencer v.Bank of Salina, 3 Hill, 520.)
It is not to be supposed that the plaintiff took the note without knowing anything of either of the parties thereto.
I think the judgment of the Supreme Court should be affirmed.