## BRIGHTON MARKET BANK *v.* PHILBRICK.

Upon the question of due diligence in giving notice of the dishonor of a note to the indorser, the result of inquiries, made subsequently to the sending of the notice, is immaterial and incompetent.

Parol testimony is inadmissible to show the contents of a written memorandum, the loss of which has not been shown.

The holder of a dishonored note is bound to exercise ordinary and reasonable diligence in ascertaining the residence or business address of the indorser, and in forwarding notice of the dishonor to him accordingly.

If he inquire of persons who, from their connection with the note, or their acquaintance with the indorser, are likely to know his residence, and are not interested to mislead him, and is distinctly told where the indorser resides, and in good faith seasonably acts upon the information thus obtained, it is due diligence on his part.

Where the holder of a dishonored note, not knowing the residence or business address of the indorser, went to the principal hotel in the village where the indorser was accustomed to do business—that at which men of the same occupation with the indorser usually stopped—to the keepers of which the indorser was well known, and from the direction of which the holder had noticed the indorser coming to his own place of

Brighton Market Bank *v.* Philbrick.

business—and, upon inquiry there, was distinctly informed that the indorser resided in a particular town ; whereupon he, in good faith, seasonably forwarded notice of the dishonor to the indorser at that town— *Held*, that this was due diligence in the holder.

ASSUMPSIT, to recover of the defendant the amount of Kimball & Magoon's note for $1,250, dated June 23, 1859, payable to him, or order, in twenty-one days at the plaintiffs' bank, and by him indorsed to the plaintiffs. Plea, the general issue. On trial before the court, the signature and indorsement of the note in suit were admitted, and the only controversy was as to the sufficiency of the notice of the dishonor of the note given to the defendant by the plaintiffs. It appeared that on the day of the maturity of the note, the plaintiffs, after making inquiry at the Cattle Market Hotel, in Brighton, where the defendant, who was a drover, had formerly stopped ; where his name was uniformly registered for nearly two years, in 1857 and 1858, as of Hampton, N. H. ; where most drovers doing business in Brighton were accustomed to stop ; by the keepers of which the defendant was well known, and from the direction of which the plaintiffs had noticed the defendant coming to their bank ; and being there expressly and distinctly informed that the defendant resided in Hampton, N. H., forwarded through the post-office proper notice of the dishonor of the note to him at that place. The defendant in fact resided in North-Hampton, N. H., and had for the seventeen years during which he had been accustomed to drive cattle to Brighton, though he was accustomed to put his cattle upon the cars at Hampton depot, which was within a few rods of the post-office there. The defendant did not receive the notice of the dishonor of the note until twelve days after its date. Kimball & Magoon failed before the note matured, and their insolvency was known to the plaintiffs. The plaintiffs proposed to show that, after the maturity of the note and notice of its dishonor, forwarded to the defendant at

Hampton, they had inquired of the principal butchers and cattle dealers at Brighton, who knew and were accustomed to do business with the defendant, and that they uniformly said they regarded him as of Hampton, N. H., and some of them had received letters from him dated there ; but, the defendant objecting to the testimony, the court excluded it. The defendant also proposed to show, by his own testimony, how he registered his name at Wilson's hotel, in Brighton, where he stopped in 1858 and 1859, after he left the Cattle Market hotel ; but, the plaintiff objecting, the court rejected the evidence. The other facts in the case sufficiently appear in the opinion of the court.

The court, upon the evidence admitted, which was reported at length, found that the defendant did promise, as the plaintiffs had declared against him, subject to the opinion of the full bench as to the sufficiency of the evidence to justify the finding, and as to the correctness of the rulings rejecting the proposed evidence on both sides.

*A. H. Hoyt*, for the plaintiffs.

*W. H. Y. Hackett*, for the defendant.

FOWLER, J. The evidence, offered by the plaintiffs and rejected by the court below, was mere hearsay, and therefore inadmissible. Besides, it was immaterial.

If the fact that the plaintiffs had made the inquiries stated, and received the answers indicated, after the maturity and notice of the dishonor of the note in suit, had been material, the proposed testimony might have been competent. 2 Gr. Ev., sec. 278 ; 1 Gr. Ev., secs. 100, 101 ; *Emerson* v. *White*, 29 N. H. 297 ; *State* y. *Wentworth*, 37 N. H. 217. But that fact was wholly immaterial upon the only question in controversy between the parties, which was, whether the plaintiffs had used proper dili-

gence in ascertaining where to send notice of the dishonor of the note, in order to have it reach the defendant. The only purpose of the testimony must have been to show that if greater diligence had been used the result would have been the same. If such evidence could have been received at all, it could only have come from the principal butchers and cattle dealers in Brighton who knew and were accustomed to do business with the defendant, by their testifying that they considered and understood the defendant to reside at Hampton, or at least that Hampton was his post-office address, and that, if inquired of at the maturity of the note, they should have so stated.

So, too, the testimony of the defendant, as to how he registered his name at Wilson's hotel, was properly excluded. It was immaterial on the question of the due diligence of the plaintiffs, and related to a memorandum in writing, the loss of which had not been shown, and was not even alleged.

The only remaining question is, were the court justified in finding due diligence of the plaintiffs in forwarding notice of the dishonor, upon the evidence reported?

When the facts are all ascertained, what is due diligence is a question of law. Bayley on Bills, 142, 144, and notes; Edw. Bills and Notes 610, and notes; *Spencer* v. *Bank of Salina*, 3 Hill 520; *Bank of Utica* v. *Bender*, 26 Wend. 645; *Remer* v. *Downer*, 23 Wend. 620.

The defendant's contract, in indorsing the note of Kimball & Magoon to the plaintiffs, was conditional. His liability depended on their giving him due notice of the dishonor of the note at its maturity. He gave them no information as to his residence or address, and upon the dishonor of the note they were bound to use ordinary or reasonable diligence to ascertain them; such diligence as men of business usually exercise where their interest depends upon obtaining correct information. They were

bound to act in good faith, and not give credit to doubtful intelligence when better could have been obtained.

Did the plaintiffs employ such diligence? Did they act in good faith, intending, and supposing, and believing, at the time, that the notice forwarded to the defendant should and would reach him in due course of mail? If they did, the court were correct in the conclusion at which they arrived, although the defendant did not actually receive the notice until some seven days after he might have received it, if it had been directed to the place of his residence.

The evidence showed, in substance, that before the maturity of the note its makers had failed, and their insolvency was known to the plaintiffs. Thereupon, not knowing the residence or business address of the defendant, the plaintiffs went to the principal hotel in the village where he was accustomed to do business; that at which men in the same occupation with the defendant usually stopped; where his name was registered as a guest for nearly two years, in 1857 and 1858, and from the direction of which they had noticed the defendant coming to their bank, and by the keepers of which he was well known, and there inquired for the residence or address of the defendant, and were distinctly and positively informed that it was Hampton, N. H. Upon this distinct and definite information they at once acted, and forthwith forwarded notice of the dishonor of the note accordingly.

In thus inquiring and in acting upon the information received as the result of those inquiries, did the plaintiffs use ordinary or reasonable diligence, such as the law requires, and such as business men usually exercise where their interest is concerned, and did they act in good faith? All the circumstances prove them to have acted in good faith—indeed, there is no suggestion to the contrary; and we think it entirely clear, upon the authority of

numerous decisions, that they must be holden to have exercised ordinary or reasonable diligence.

Where the holder of a dishonored note applies to a man worthy of belief for information, and is answered distinctly that the indorser resides at a particular place, he is not bound to push the inquiry farther; for ordinary diligence can require no more than that the inquiry shall be pursued until it is satisfactorily answered. *Bank of Utica* v. *Bender*, 21 Wend. 645.

If the notary or holder inquire of persons who, from their connection with the transaction, or their acquaintance with the indorser, are likely to know his residence, and are not interested to mislead him, and he acts upon the information thus obtained, it is due diligence on his part. If he is told distinctly, by a credible person, who has no interest to mislead him, where the indorser resides, he has a right to assume and act upon the information as true. *Rawdon* v. *Redfield*, 2 Sandf. 178 ; *Spencer* v. *Bank of Salina*, 3 Hill 522 ; *Ransom* v. *Mack*, 2 Hill 587 ; *Carroll* v. *Upton*, 2 Sandf. 171 ; S. C., 3 Comst. 272.

There must be, therefore, on the finding of the court below,

*Judgment for the plaintiffs.*