Ranney, J.
The bills of exchange upon which this action was brought, were drawn and indorsed by the plaintiff in error. His liability upon them was conditional, and his obligation to pay them, depended upon their being duly dishonored and legal notice of such dishonor; unless, indeed, he had waived such diligence on the part of the holder. The bills were legally dishonored and properly protested, and notices for all ■the parties conditionally liable, were in due time forwarded to the defendant in error, a subsequent indorser of the bills. The right to recover was placed upon' two grounds: 1. That the defendant in error, had, on the day he received these notices, ■forwarded by mail, those directed to the plaintiff in error, to his *95 place of business at Chicago; and, 2. That a few days thereafter, in a personal interview with the defendant in error, he had recognized his liability as still existing, and had expressly promised to pay the bills. The verdict of the jury may have been founded upon the ground last stated, but, as there was a conflict in the evidence upon it, there is nothing in the record to show that it was; and we are, consequently, compelled to examine the facts applicable to the first ground, and the instructions of the court based upon that state of facts.
Stating these facts as broadly as anything in the evidence will warrant, they amounted to this: The plaintiff in error was a resident of Morristown, New Jersey, and had no fixed residence in the State of Ohio, or at Chicago; but during most of the season of 1856, had been engaged in the lumber business, staying at Cleveland, and in Ottowa county where he owned a saw mill. That about the first of November, he left ■Cleveland, and before doing so, informed the defendant in error that he was going to Chicago to dispose of a quantity of lumber which he was about shipping to that place, and should return from there to Cleveland; and had not returned when the notices were mailed to him at Chicago on the 22d of that month — that being the very day upon which they were received by the defendant in error from the notary in New York. In point of fact, the plaintiff in error was in Chicago when the notices were mailed to him, but probably left there before they arrived, and shortly after was in Cleveland where he was met by the defendant in error, and fully informed of all that had transpired.
Upon this state of the facts, counsel for the plaintiff In error requested the court to charge the jury.
“ That if the defendant’s residence was not in Chicago, or he was not engaged in any permanent business there, but was there temporarily, and for a temporary purpose only, the sending to him, at Chicago, notices of the protest of said bills of exchange would not be, unless the defendant actually received them, due diligence, and sufficient to charge the defend* ant with the payment of said bills.-”
To which the court responded as follows :•
*96 “ That if the defendant did not reside in Chicago, and was not engaged in any permanent business there, but was there for a purpose merely temporary, sending notices of protest to him at Chicago would not, as»a proposition of law, constitute due diligence sufficient to charge the defendant. But if the defendant had gone to Chicago on business which would detain him an indefinite period of time, and might occupy him there during the remainder of the season of navigation on the lakes, that might be the proper place to send the notices to him; and it was a question of fact for the jury to find, referring to all the testimony on that question, whether the business of the defendant at Chicago was of that character, or whether the plaintiff had sufficient reason from his information derived from the defendant, or from his own knowledge of the defendant’s business, to believe the defendant was at Chicago at the time the notices were sent by him, such notices would be due diligence on the part of the plaintiff, and sufficient to charge the defendant.”
If we were permitted to treat the matter as a question of injury to the plaintiff in error, there would be no difficulty whatever in saying that he lost nothing by the course pursued by the defendant in error, and probably was actually informed of the dishonor of the bills sooner than he could have been, if the notices had been sent to his residence in New Jersey. Rut we are not at liberty to take so wide a view of the subject. The law has very definitely settled, what shall constitute due diligence in such cases, and when the facts are ascertained, it is the duty of the court to determine, as a question of law^ whethéf reasonable diligence has been used; and it can not be submitted to the jury as a question of fact. Bank of Columbia v. Lawrence, 1 Pet. 578; Bank of Utica v. Bender, 21 Wend. 643; Carroll v. Upton, 3 Com. R. 272; Wheeler v. Field, 6 Metc. 290; Belden v. Lamb, 17 Conn. 442; Lorain Bank of Elyria v. Townsend, 2 Ohio St. Rep. 343. The object has been to attain the greatest possible certainity in a matter so vital to the interests of the mercantile community, and the equities of particular cases have not been allowed to interfere with the attainment of this object. In this state, *97 these rules have been fully adopted and constantly enforced, and if we saw reason now to doubt their justice or policy, we should find ourselves unable to change them, without a corresponding change should take place in states and countries with which our commercial relations are so extensive and important.
The parties in this case not residing in the same place, there is no doubt, that it was a proper case for sending the notices by mail, and in such cases it is well settled, that putting into the post-office seasonably a notice properly directed, is, in itself, due diligence, or constructive notice, and will be sufficient although it never reaches the party to whom it is directed. 16 M. & W. 124, Woodcock v. Houldsworth; Dickens v. Beal, 10 Pet. 570; Jones v. Lewis, 8 W. & S. 14. As to the place to which the notice should be directed, it is. equally well settled, that it should be sent to the drawer or indorser’s residence or place of business, if either is known to the holder, or, upon diligent inquiry, can be ascertained and if neither, are known nor can be found, the law dispenses with any notice whatever. Bank of the United States v. Carneal, 2 Pet. 543; Chitty .on Bills, 486; Bailey on Bills, 280. But while this is the general principle, the spirit of the rule-certainly is, that the notice should be sent to such place that it will be most likely promptly to reach the person for whom it is intended; and, hence, in its application to particular cases, it has often been held that a notice is sufficient if sent to-the post-office where the party usually receives his letters, although not that of his residence, as well as to that where he resides; and, in all cases, the notice may be sent to the place-pointed out by the drawer or indorser, and in general will be sufficient, both in reference to himself and parties who stand, behind him on the bill. Reid v. Payne, 16 J. R. 218; Bank of Geneva v. Howlet, 4 Wend. 328; Bank United States v. Lane, 3 Hawks, 453 ; Shelton v. Braithwaite, 8 M. & W. 252. Indeed, it is suggested in the present case that the statement made by the plaintiff to the defendant in error, sufficiently indicated Chicago as the place to which the notices might be-sent. Whatever of weight this suggestion may properly have,, it can only be considered by us, when the case in the court *98 below appears to have been decided upon that ground. As jet, this consideration has not been passed upon in that court.
How then, in view of the foregoing principles, stands the case before us ? Was Chicago, in the sense of the legal rule, so far the residence or place of business of the party as to make .the notices sent there, constructive notice of the dishonor of ■the bills? A very careful examination of all the evidence •now contained in the record, has fully satisfied us that it was not. Upon this point, there is no conflict in the evidence. The plaintiff below says the defendant informed him he was going to Chicago “ to dispose of a quantity of lumber, which he was about shipping to that place, and should return from there to Cleveland; ” that he knew the defendant had been to ■Chicago, but did not know that he was there when the notices were mailed, and had reason to believe he did not receive them títere, as he was soon afterward back, to Cleveland. The defendant says he went to Chicago, and was there from the 1st to the 24th of November, “ disposing of a quantity of lumber,” and in the afternoon of the day last named, he left Chicago and arrived at Cleveland on the morning of the 26th ; that he had ■no permanent business at Chicago, and was there for a temporary purpose only, and never received the notices sent.
The question is then reduced to this: Does going to a city to dispose of property, which occupies the party for three weeks of time, without one word of explanation as to the mode of doing the business, or his relations to the post-office, make ■such city his place of business within the meaning of the commercial rule ? If we were to affirm that it did, the principle must have a very wide, and, as we think, a very disastrous ■application to a large class of business men, dealing more largely than any other in commercial paper. The stock and produce of the westaretaken to the eastern cities, by persons ■engaged in that business, to be sold; and most western merchants, once or twice in each year, spend from a few days to a few weeks at the same places, replenishing their stocks of goods. Did anybody ever suppose, that these persons were bound to watch the post-offices in those cities for notices of the protest of their paper? We think not; and yet if these *99 notices are sufficient, we see no distinction to be taken between this case and theirs. It is very certain that no decided case has given any countenance to the supposition that such a notice, not received by the party, would be sufficient.
The cases of Tunstall v. Walker, 2 Smedes & Marshall, 638, and Chouteau v. Webster, 6 Met. 1, have, perhaps, gone to the verge of the law, but they are very far from reaching this case. In each of those cases, the defendant was, at the time the notice was forwarded to him at Washington, a senator in congress and in actual attendance on that body. The first of these cases had been before decided by the high court of errors and appeals, and is reported in 1 How. Miss. Rep. 259. Upon the then state of the evidence, the court held that a notice sent to Washington City, when the senator had a residence in the state which he represented, would not be sufficient to' charge him as an indorser; and the reason assigned is that, “ his absence was but temporary, and the duration of that absence uncertain. In case of such absence from home, the law presumes that some member of the family is still at the residence, and that communications will be forwarded to the proper address.” But upon a further trial of the case, it was proved that the defendant had no actual residence in Mississippi, and had left no agent at his last place of abode to receive or forward his letters; that from the 4th of February, when the notice was forwarded, to the 4th of March ensuing, he was in the actual discharge of his official duties at Washington, and in the daily habit of receiving his letters at the post-office in that city; and upon this state of facts, the court held the notice sent to that city sufficient. In the case of Chouteau v. Webster, the defendant had left an agent in Boston in charge of his business, but this was unknown to the holder of the paper; and upon an agreed statement of the facts showing that the notice- was, in due time, deposited in the post-office directed to the defendant at Washington, where he was then, and for some time afterward, in attendance upon ■a session of congress; and that all letters addressed to members, were regularly and immediately taken from the post-office by officers of the senate, and delivered to such members, *100 the court held the notice sufficient. Ch. J. Shaw, after premising the caution, that the “ decision is founded on the circumstances of the particular case, and may be varied by other facts,” proceeds to place it upon the ground that, while the-defendant’s domicil was at Boston, his “ actual residence ” was. at Washington, “to which, for the time being, he was fixed by his public duty.” We have no doubt of the correctness of these decisions; and no comment can be necessary to distinguish them from a case where the party simply visits a place for a purpose clearly temporary and special, with no proof to show 'that he has identified himself with its business, or established any relations with its post-office. Regarding that as ¿Ms case, we are clearly of tlie opinion, that the plaintiff in error was entitled to the instruction he asked, and that the learned judge erred in the qualifications he annexed to the instruction given.
If we were entirely satisfied of the correctness of this qualification in the abstract, we should still be compelled to reverse-the judgment, for the reason that there was no evidence to give any wider scope to the inquiry than that contemplated in the instruction asked for. That this was an error has been settled by this court, and the value of jury trial will very much depend upon the observance of the principle. In Bain v. Wilson, 10 Ohio St. Rep. 16, the instruction asked and given, as well as the qualification annexed by the court, were all held to be a correct exposition of the law; and yet, as ** tnere was no evidence before the jury which required or even authorized the .qualification annexed by the court,” the judgment was reversed. The court say: “ The judge must confine himself in his remarks, to the law and evidence of the case. So far from being under any obligation to call the attention of the jury to a conjectural state of facts, it would be highly improper for him to do so.” And the reason for this, is very pertinently stated in one of the cases referred to: “Jurors are constantly inclined to look to the opinion of the judge for instruction as to what is and what is not evidence. When he tells them to determine a given problem from the evidence before them, they can hardly do otherwise than infer that, in *101 his judgment, there is evidence upon which their verdict, when given, may rest.” Fay v. Grimstead, 10 Barb. 321.
But we are very far from being satisfied that the qualification annexed in this case, does contain a correct statement of the law. After stating that, if the plaintiff in error was in •Chicago for a purpose merely temporary, the notices would not be sufficient, the court proceed to say, that if his business there was such as would detain him an indefinite time, and 44 might occupy him there during the remainder of the season of navigation on the lakes,” it might be proper to send the notices to that place. If he went there for the special purpose •stated in the evidence, we do not think it would make any ■difference, that he could not tell precisely when he would be able to sell his property; and, when it is remembered, that this was in the month of November, we do not think that a ■delay in effecting his object until the navigation should close, would be in any way decisive. At most, it would be but a circumstance, entitled to its just weight with others in determining the question, whether Chicago was his place of business, or whether he was a mere sojourner there for a special and limited purpose. In the one case, he might be charged by a notice sent to that post-office, because he is presumed to have established' relations with it; in the other, no such presumption arises, and he can be charged only upon the actual receipt of ■the notice. Indeed, when the whole instruction is taken to.gether, it amounts to little less than a request to the jury, to go beyond the uncontradicted and legally insufficient facts in ■evidence, and inquire into the motives of the plaintiff below; and concluding with the positive instruction, that if he had sufficient reason “ to believe the defendant was at Chicago at the time the notices were sent,” they would be sufficient to charge him.
Without perhaps intending to do so, it seems to us, that the -court has incautiously surrendered its rightful province to judge of the sufficiency of the facts to constitute due diligence, and has devolved that duty upon the jury. To approve of that, would be to abandon all that has been gained in the way of certainty, in the determination of questions of this character.
*102 "While it is true, that the rules necessary to be observed in charging parties conditionally liable upon negotiable paper,, are strict, and require much care and promptitude on the part of the holder; yet they are such as long experience has demonstrated to he necessary, and a substantial compliance with' them lies at the very foundation of the contract into which the drawer or indorser enters. His contract is conditional, and to make it absolute without a fair performance of the conditions, would be to make a contract for him, instead of enforcing the one he has made for himself.
The judgment must be reversed, and the cause remanded to the district court of Cuyahoga county for further proceedings..
Peck, C.J., Gholson, Brinfbrhoee and Scott, JJ., concurred.