ADAMS, ADM'R OF GEORGE, VS. BOYD.

1. CONTRACT—BILL OF EXCHANGE.
A contracted with B to do certain work and receive in full consideration therefo an order on C who owed B. After the completion of the work this order, the body of which was as follows: "Please pay to   *   *   *   the sum of $550 and the same will be credited on your joint note to me" was delivered t> A, who held it for nearly two years before presenting it to the drawer. *Held*, that the order was a bill of exchange, payable on demand, that it was the duty of the payee to present it in due time, and if dishonored to give due notice to the drawer; that the delay in the presentment was unreasonable and discharged the drawer from liability; *held* further, that A could not recover the value of the work under the contract.

APPEAL from *Pulaski* Circuit Court.

Hon. T. C. PEEK, Special Judge.

*Wassel* and *Moore*, for appellant.

*Matthews* and *Knight*, contra.

TURNER, J. :

This is an action brought by F. H. Boyd against Alexander George for the recovery of $550, founded on a written contract bearing date the 4th day of June, 1873, exhibited with

and made a part of the complaint, by which contract the plaintiff agreed to do and perform certain work and labor for the defendant, and to make certain repairs and improvements on certain buildings and other property of the said defendant, and to furnish the materials necessary to enable him to complete the work agreed to be done, all of which is fully and specifically set forth in the contract. It was further agreed that upon the completion of the work, the defendant was to pay the plaintiff the sum of $550 in an order for that amount on J. W. Hopkins and wife, which the plaintiff agreed to receive as full consideration for said work.

The complaint sets out the contract in substance and alleges that plaintiff performed the work stipulated and agreed by him to be performed, and that in consideration thereof the defendant became indebted to him in the sum of $550.

That on or about the 4th of December, 1873, defendant gave to plaintiff an order on J. W. Hopkins and wife for the sum of $550, which sum, if paid by Hopkins and wife was to be applied in payment of the sum which defendant had contracted and agreed to pay plaintiff for performing the work agreed by him to be performed for defendant. That he presented the order to Hopkins and wife in due time which they failed and refused to pay, of which fact defendant was duly informed.

At the April term, 1876, of the Pulaski Circuit Court the defendant filed his answer, in which he admits that the contract is truly set forth in the first paragraph of the complaint, but alleges that the said sum $550 was to be paid in an order for that sum on J. W. Hopkins and wife, and which the plaintiff agreed to receive as full compensation for said work.

Defendant admits that the plaintiff performed the work according to contract, and that he became indebted to the plaintiff in the sum of $550, the whole amount of which has been

paid in the manner promised by the defendant and agreed to be accepted in full payment by the plaintiff, and denies that there were any conditions or contingencies about said payment, and asserts that the same was absolute and unconditional.

That at the time the contract was entered into J. W. Hopkins and wife were indebted to defendant in a large amount for real estate in the City of Little Rock, which was secured by a lien on the same, and that the order above referred to was given with reference to said debt due the defendant, and that afterwards in settling said debt, credit was given to Hopkins and wife for the amount of said order, $550.

Defendant does not know whether said order was ever presented to Hopkins and wife, or if presented, whether the same was ever paid, and denies that he was ever duly informed of its non-payment.

At the same term of the Court, to-wit: On the 6th day of June, 1876, this cause came on to be tried and was submitted to a jury, who after being empannelled and duly sworn, returned into Court the following verdict: "We the jury find for the plaintiff, F. W. Boyd, and assess the damages at $649.29," whereupon the Court rendered judgment against the defendant for the amount so found with costs.

And thereupon the defendant moved the Court to set aside the verdict, and grant him a new trial, assigning the following causes therefor:

*First*—That the said verdict is not sustained by sufficient evidence, and is contrary to law.

*Second*—That there was error of law occurring at the trial, in that the Court gave the 4th, 5th, 6th and 7th instructions.

*Third*—That the said verdict and judgment is contrary to the evidence.

The motion for a new trial being over-ruled, the defendant filed his bill of exceptions, and took an appeal to this Court.

The bill of exceptions discloses the following evidence in this cause :

F. H. Boyd, the plaintiff, after describing the written contract exhibited with his complaint and the circumstances attending its execution, stated that he spoke to Hopkins before he did the work, and told him he was about to take an order from George on him for $550, and he Hopkins said it would all be right as he was owing George, and would as lief pay witness as George. The work was completed in two or three weeks after the date of the contract. Soon after it was done, witness applied to Johnny Adams, (who had drawn up the contract and was attending to George's business) for the order on Hopkins and wife and he put him off, saying he did not have it with him, that it was up at Tucker's Bank locked up in the safe and could not be got. That he applied to Adams as many as fifteen or twenty times for the order, before he obtained it. The order was delivered to him some time in January or February, 1874, but don't remember the exact date. On securing the order, witness, who was living in Argenta, took it home and left it. He did not see Hopkins for a long time after he got it. Hopkins was living in the country on this side of the river ten or twelve miles from town. Saw him several times in Little Rock before he got the order.

In March, 1874, he went out to see Hopkins and tried to get lumber from him, but he refused to let him have it without the money or the order. Witness thought that if he could have got the order sooner from George, he could have worked it, so as to have got the amount out of Hopkins.

Witness presented the order to Hopkins in December, 1875, and he told him he did not owe George anything then, and re-

fused to pay the order or any part of it, and wrote "protested" across the order and dated and signed his name to it.   This was the first time witness had an opportunity to present the order to Hopkins.   He never got a cent from George for the work done, or materials furnished, and has nothing from him but the order.   He took the job and agreed to accept the order expecting to get it when the work was done.   Witness don't know why Adams did not give him the order sooner.   It bears date June 4th, 1873, and is in the words and figures following:

LITTLE ROCK, ARK., <i>June 4th, 1873.</i>

*Mr. J. W. Hopkins and wife;*

Please pay to F. H. Boyd the sum of Five hundred and fifty dollars and the same will be duly credited on your joint note to me.          ALEXANDER GEORGE,

By JOHN D. ADAMS, Jr.

Endorsed,

Protested, December 13th, 1875.

J. H. HOPKINS.

Witness further stated on cross-examination : That he did not present the order to Hopkins until December, 1875.  That the reason was, he (Hopkins) lived a long way off, out in the country, and it was not convenient for him to go and see him, and that he considered Hopkins good any way.   That if he happened to meet Hopkins in Little Rock, he did not have the order with him.   It was at his house across the river in Argenta.   That soon after he did present the order to Hopkins he notified George through Adams that Hopkins refused to pay it, and that he never went to see George about getting the order from him, but always went to Adams, who was attending to George's business.

J. W. Hopkins, a witness for the plaintiff, stated : That some time in 1871, he bought some lots in the name of his wife from George in the City of Little Rock;  that he made

payments on them to the amount of $2735. He could not make arrangements to pay the balance due and George placed the notes in the hands of Wassell & Moore, who brought suit in the Pulaski Chancery Court to enforce the vendor's lien for balance of the purchase money. They obtained a decree against witness, and he spoke to Major Moore of the firm of Wassell & Moore, and told him he could not pay the amount of the decree, and proposed to give up the title bond and relinquish all claim to the lots (acting for himself and wife) if he (George) would surrender the notes and cancel the whole proceedings, and thus settle the decree, if George would pay the cost of suit. A few days afterwards Major Moore called witness into his office and told him George accepted his proposition. Moore then drew up a receipt and the matter was settled. Witness delivered up the title bond, and relinquished all claim to the lots and the notes were given up to him. He did not notice particularly about the credits endorsed on the notes. Considered the matter all settled and paid but little attention to the notes. Don't know whether the sum of $550, the amount of the order of F. H. Boyd, was credited on either of the notes or not. He just agreed to lose all he had paid and cancel the whole transaction. Has no recollection of Major Moore having shown him any statement of the credits, or the amount of the claim. This settlement with Major Moore was about the 11th day of July, 1874.

Some time previous to this, before the suit was brought and while he was owing George, Boyd told him he was about to do some work for George and that George proposed to give him an order on witness, and asked if it would be good, witness told Boyd that he was owing George for lots and that the order would be good as he would as soon pay him as George. Boyd came to him and tried to get some lumber, but he refused to let him have it, without the order of George or the money.

Heard no more about it until last winter about the 15th of December, 1875, when Boyd presented the order for $550 that was exhibited here to-day. Witness refused to pay it, or accept it, and told Boyd that he did not owe George a cent. That all matters between them had been settled. Witness took the order wrote on it "protested," dated and signed it. The date on the order is the date when Boyd first presented the order to witness.

On cross examination, witness stated that if the order of George to Boyd had been presented to him at any time before his settlement with George, it would have been paid.

John Dudley Adams, stated: That he drew up the articles of agreement between Boyd and George at the request of the parties, and they both signed them. Boyd did the work and so far as he knew, to the satisfaction of George. Witness drew the order on Hopkins and wife for $550, in George's name as his agent. Boyd did not call for it until some time after the work was done. He met witness on the street and asked him for it. Witness told him it was up at Tucker's Bank, that he did not have it with him, but that he could get it any time by calling on him at his place of business. Some time afterwards, not later than October or November, 1873, he called on witness at his house, and he gave him the order. He got it the second time he called for it. Could have got it at any time if he had called at witness' place of business. The only reason he did not give it to him the first time was because he asked for it on the street when witness did not have it with him. Is certain that it was not later than October or November, 1873, that he gave the order to Boyd. There was no reason why he should have refused to give Boyd the order. The work was done and George had agreed to give him the order, and there was nothing to be made or gained by withholding it. Some time after witness gave the order to Boyd

he met him aud asked him if he had ever collected the order, and Boyd replied : Oh ! That order is all right. It is drawing 3 per cent. interest per month for me. Witness heard nothing more about it till about the time the suit was brought or short- ly before, when Boyd came to him and told him Hopkins had refused to pay the order and wanted to know to whom he should look for payment of the $550. Witness could give him no satisfaction. The $550 was duly credited on the note of Hopkins to George, and was so credited at the time the notes were placed in the hands of Wassell & Moore. Their receipt for the notes mentions the payment of the $550.

Upon cross-examination, witness further stated that he was the son-in-law of the defendant, George. Had nothing to do with making the bargain between plaintiff and defendant. Was requested to draw up the articles of agreement between them ; nothing was said about the time when Boyd was to get the order.

C. B. Moore, a witness for the defendant, stated that he was one of the firm of Wassell & Moore. That they were em- ployed by George in the summer of 1873, to bring suit in the Pulaski Chancery Court to enforce the vendor's lien against J. W. Hopkins and wife, on certain lots in the City of Little Rock. Two notes of Hopkins and wife to George were placed in their hands. On one of the notes there was a credit of $550 endorsed as paid by draft in favor of F. H. Boyd. This credit was on the note when placed in their hands. Suit was brought, a decree obtained and the property was advertised to be sold, when the whole matter was settled in the manner detailed by Hopkins.

When the decree was rendered in the Chancery Court the credit of $550 was taken into the calculation and the amount deducted. Witness made the calculation and drew up the decree and knew that the $550 credit was taken into consid- eration.

On cross-examination, witness further stated : That when the arrangement was made between Hopkins and George, to settle the matter of the decree, he transacted the business for George. The receipts, cancellation of decree, etc., were drawn up in his office and there signed by Hopkins. Witness is quite sure that the amount of the decree was mentioned and is very sure that Hopkins saw the credit of $550, and knew at the time that it was taken into consideration in calculating the amount that was due on the decree.

A. George, the defendant, stated that Adams drew up the papers between Boyd and himself ; that Boyd was to take an order on Hopkins for the amount he was to pay him for the work, $550. Witness supposed the matter was all settled long before the suit was brought, he never heard anything about the order not being paid until a short time before the suit was brought, when Mr. Watkins, Boyd's. lawyer, came to see him about it. Witness contracted with Boyd to do the work and agreed to give him $550 for the job, which was more than he would have given if he had been going to pay the cash for it. Hopkins was hard to get money out of. He was owing him and he was glad to get that much settled by the job of work, and as Boyd agreed to accept the order on Hopkins in payment he made the contract with him at $550. Boyd never informed witness that the order was not paid. He never called on him him about it, or asked him for the order.

On cross-examination witness stated that Boyd did the work according to contract, that he never paid him any money, or in any other way, except by the order on Hopkins.

F. H. Boyd, the plaintiff, on re-examination, denied having told Adams that he had ever been paid the $550 by George, or any one else, and was receiving 3 per cent. a month for it from Hopkins, but did say to Adams that previous to this

transaction he had loaned money to Hopkins at three per cent. a month, and that he considered Hopkins good.

J. W. Hopkins, witness for the plaintiff, on re-examination stated that he had borrowed money from Boyd previous to this transaction, and had paid him as much as 3 per cent. a month for it. That he was not aware of the existence of the order and the indebtedness, till the order was presented to him in December, 1875.

Whereupon the plaintiff moved the Court to instruct the jury as follows :

*First*—The answer admits that Boyd did the work, and that the price thereof was the sum of $550, so much of the controversy is thus established and the jury is to so consider it.

*Second*—That the mere paper with the order written thereon is of no value nor any consideration for the promise by Boyd to do the work for George; that a promise by Boyd to do the work for George for merely a piece of paper with an order written upon it would be void as being a nude pact, (an agreement without a consideration) and not binding upon Boyd. That the real and true consideration of this contract is the promise by George to pay Boyd the agreed price of the work $550, and that the law in all cases *implies* a contract, that the drawer of an order (in this case George) will pay it to the payee (in this case Boyd) if the drawee (in this case Hopkins) should refuse or be unable to pay.

*Third*—If the jury believe that George had no moneys on deposit with Hopkins but drew the order on Hopkins merely because Hopkins was indebted to him, then George is not discharged by the delay of Boyd in presenting the order to Hopkins and the giving of notice to George that Hopkins had refused to pay the order, and George is liable in this suit to pay Boyd the amount agreed on $550, as the price or value of the work and labor with interest as claimed from the date of the order, 4th of June, 1873.

*Fourth*—If the jury believe that defendant gave the order to plaintiff within a reasonable time and Hopkins refused to accept or pay the order, and that George was duly notified of this and payment has been demanded of and refused by him then Boyd is entitled to judgment against George as claimed in the complaint.

*Fifth*—If the jury believe that George, since he drew the order on Hopkins has had a settlement with him, and that all of Hopkins indebtedness to George was then taken into account between them, and was settled with and discharged by George without any allowance being made to Hopkins of the amount of the order in that settlement, and that no part of the price of the work done by Boyd has been paid to him by Hopkins or by George, then Boyd is entitled to judgment against George as demanded by the complaint.

*Sixth*—If the jury believe that in the settlement made between Hopkins and George, the amount of $550 of the indebtedness of Hopkins to George was left out by George unsettled for between them, and even if that amount was credited on Hopkins' notes and that when the order was presented to Hopkins, if presented in a seasonable time, he refused to accept or pay the same, that this did not in anywise discharge George from liability on said order.

*Seventh*—That the order given by George to Boyd on Hopkins and wife is a condition precedent that Hopkins and wife would accept the same if presented in apt time, and that if said order was so presented to Hopkins and he refused to accept or pay it, then George on notice thereof became liable for the amount of the order given by him to Boyd, and Boyd is entitled to judgment in this action as demanded.

The Court gave the first, fourth, fifth, sixth and seventh instructions, and refused to give the second and third. To the

ruling of the Court in giving the fourth, fifth, sixth and sev-
enth of said instructions the defendant excepted.

And thereupon the defendant moved the Court to instruct
the jury as follows ;

*First*—If the jury believe from the evidence that at the
time the contract was made between Boyd and George, it was
agreed and understood, that Boyd should receive in payment
for the work an order on J. W. Hopkins and wife, and if at
the time the order came into the hands of Boyd, Hopkins and
wife were indebted to George, and that the order was not pre-
sented for acceptance or payment to Hopkins and wife within
a reasonable time, and if then presented, payment was
refused, Hopkins and wife in the mean time having settled all
indebtedness to George including the said order for $550, the
plaintiff cannot recover.

*Second*—In order to entitle the plaintiff to recover in this
case, it must be on the draft, or order, not on the account for
services rendered, as the draft being a higher security it ex-
tinguished the original contract, and to entitle a recovery on
the draft, the plaintiff must bring himself within all the
requirements of the law merchant as holder of the draft.

*Third*—In order to bind the drawer of a bill of exchange
or order for money payable at sight, or on demand the same
must be presented to the drawer within a reasonable time, and
with reasonable diligence, and it is for the jury to say from all
the circumstances what is reasonable time and reasonable dili-
gence in this case.

*Fourth*—In order to bind the drawer of a bill of exchange
or an order for money payable at sight or on demand, it is
necessary for the payee to present the same for payment within
a reasonable time, and if not paid, to give notice of non-pay-
ment to the drawer, as required by the law merchant.

*Fifth*—If the jury believe from the evidence and the written contract between the parties, which is made a part of the complaint, that Boyd agreed to receive in payment for the work done $550 to be in an order on J. W. Hopkins and wife and which order Boyd agreed to receive as full consideration for said work, and if the order was in fact given by George to Boyd, the plaintiff cannot recover, and this especially if Boyd consulted Hopkins before making the agreement anv learned from him that he and his wife were owing George as much as the amount of the order.

All of which instructions asked for by the defendant were given by the Court.

The record in this cause presents several important questions for our consideration. It will be seen that by the terms of the contract between the parties, that the plaintiff was to perform for the defendant certain specific work for which the defendant was to pay him $550 in an order on J. W. Hopkins and wife, which the plaintiff agreed to receive as full consideration for the work done.

The pleadings and proof show that the work was completed according to contract, and that the order bearing date June the 4th, 1873, for $550, was drawn by the defendant on Hopkins and wife in favor of the plaintiff, to whom it was delivered in the latter part of the year 1873, or early in the year 1874, and that the plaintiff did not present the order to Hopkins until nearly or quite two years thereafter. It appears that at the time the contract was entered into and previous thereto, Hopkins and wife were indebted to the plaintiff for real estate purchased from him situate in the City of Little Rock, for which he had taken their notes and retained a lien upon the property sold. That before performing the work, the plaintiff had a conversation with Hopkins, and told him he was about to take an order from the defendant on him for $550 and that Hopkins

told him it would all be right as he was owing the defendant and would as lieve pay the plaintiff as defendant. After completing the work as provided for in the contract some delay occurred before the plaintiff received the order. He states in his evidence that soon after the work was completed, he applied to Adams, defendant's agent, for the order, who put him off saying he did not have it with him, that it was at Tucker's locked up in the safe and could not be got out. That he applied to Adams repeatedly for it, but he always put him off with some excuse, but at length he delivered it to him some time in January or February 1874.

Adams in his testimony states that the plaintiff applied to him only twice for the order before he obtained it, and the reason he did not get it the first time was that he applied to him on the street for it when he did not have it with him. That he told the plaintiff that he could get it any time by applying to him at his place of business.

It is further shown that some time in the summer of 1873, the notes of Hopkins and wife given to the defendant for the real estate sold by him to them remaining in part unpaid, were placed in the hands of Wassell & Moore for collection, previous to which a credit was endorsed by the defendant on one of the notes for $550 on account of the order for that amount in favor of the plaintiff.

Suit was brought by Wassell & Moore for the defendant in the Pulaski Chancery Court against Hopkins and wife to enforce the vendor's lien against said real estate.

In due time a decree was obtained against Hopkins and wife and the property advertised for sale.

Pending these proceedings, a settlement was had between the defendant and Hopkins and wife by which the balance of indebtedness due from Hopkins and wife to the defendant and all their claim to, and interest in said real estate was cancelled

by mutual consent and the notes delivered up to Hopkins and wife.

At the time of this settlement the $550 order was outstanding in the hands of the plaintiff, and unpaid, although previous thereto the amount of the order had been credited on one of the notes due from Hopkins and wife to the defendant as if actually paid.

What was the effect of the order on the rights of the parties when drawn and delivered to the plaintiff, as provided for in the contract?

Did it operate as an absolute payment to the plaintiff, as contended for by the defendant's counsel, or did a contingent liability on the order attach to the defendant, to be determined by the plaintiff's action as governed by the rules of the law merchant?

It may be plausibly maintained that payment to the plaintiff in the order on Hopkins and wife was an absolute and unconditional payment and released the defendant from further liability to the plaintiff, yet we cannot think this is the legal mport of the contract.

What then is the character of the order delivered to the plaintiff? We think it is unquestionably a *bill* of *exchange*, and that when drawn and delivered to the plaintiff the rights and liabilities of the parties, drawer and payee were to be governed in all things by the rules of the law merchant.

Chancellor Kent, in defining a *bill* of *exchange*, adopts the language of Bagley, who says: "A bill of exchange is a written order or request by one person to another for the payment of money absolutely and at all events." 3 Kent, 74. And Smith, in his mercantile law says: A bill of exchange is a written order for the payment of a certain sum of money unconditionally. Smith Merchant Law, 362.

These definitions, it is true, omit the negotiable element of a bill of exchange, which, though not essential to its validity, is supposed in the definitions of Kyd, Pothier and other law writers.

Tested by these definitions, this order must be regarded as a Bill of Exchange, for it is a written order or request by the defendant to Hopkins and wife to pay the plaintiff $550 absolutely and at all events.

The order then being a Bill of Exchange, let us inquire what were the undertakings, duties and obligations of the parties to it.

The defendant, who was the drawer, undertook to the plaintiff, who was the payee, that the drawees, Hopkins and wife, should pay the order when it became payable, on due presentment thereof, for that purpose, and if the drawees should not pay it when it became so payable and the payee gave him due notice thereof, then he (the drawer) would pay the sum or amount stated in the order to the payee, with such damages as the law allows in such cases as an indemnity.

The plaintiff was bound to present the order for acceptance and payment within a reasonable time after receiving it, and to give due notice of the refusal of Hopkins and wife to accept or to pay the order to the plaintiff within the time prescribed by law ; on failure of either of which the defendant is exonorated from all liability on the order.

Hopkins and wife having failed to accept the order are under no legal obligation to the plaintiff, and whether the defendant is released from liability on the order in consequence of the laches of the plaintiff, is a question we must necessarily decide.

Bills of Exchange are usually drawn payable at a certain time after date, or after sight, and in either case they are entitled to days of grace, or they may be drawn payable on demand, or what is the same thing in law, without specifying

Adams, Adm'r of George, vs. Boyd.

the time when payable, in which case they are payable on demand and are not entitled to days of grace.

The order under consideration is in effect payable on demand, and it was the duty of plaintiff to present it in due time to Hopkins and wife for payment, and if dishonored, to give due notice to the defendant of its non-payment.

In the case of bills entitled to grace, payment should be demanded on the third day of grace, and notice immediately given to every party who would be entitled to bring an action on it after paying it.

According to the received interpretation of the law, this notice should go by the first mail after the day next to the third day of grace; so that if the third day of grace be on Thursday and the drawer and *endorser* (if there be one) resided out of town, the notice *may*, indeed be sent on Thursday, but *must* be put into the Post Office or mailed on Friday, so as to be forwarded as soon as possible thereafter. 3 Kent. 105, 106; Smith's Mer. Law, 328, 329; Chitty on Bills, 325, 326, 327, 433, 434, 435; Edwards on Bills, 548, 549.

In the case of a bill or order like this payable on demand, the duties of the payee are but slightly modified.

Such a bill "becomes due at the moment of presentment, and the presentment must be made within a reasonable time after receiving it. What is a reasonable time, is, in the absence of any settled rule, said to be decided in the same way as the like question concerning the presentment for acceptance of bills payable at or after sight, and a longer time for presentment will be allowed when the instrument has been circulated and was apparently meant for circulation, but any delay beyond what the common course of business warrants is, in ordinary cases, *unreasonable.* "The course of business formerly was understood to be to allow the party to keep it, if payable in the place where it was given, till the morning after

3

the next business day after its receipt; if payable elsewhere, till the next post'' * * * * *

The established rule now is, that if the instrument be payable at a banker's house and in a place where a party received it, it suffices to present it for payment *at any time* during the banking hours on the day after it is received. If it be payable elsewhere, it suffices to forward it by the regular post on the day after it is received, and the party receiving it by post has till the next day to deliver it.'' Smith's Mer. Law, 318, 319; Parsons Mer. Law, 103, 105, 110, 120; Edwards on Bills, 390, 392.

Notice of the dishonor of such a bill or order as this must be given, and with like effect as to the rights and liabilities of the parties thereto, as in other cases of the dishonor of bills of exchange.

What is due diligence in giving notice of a bill to the drawer or *indorser*, (if there be one) is said to be usually compounded of law and fact, and proper for the decision of a jury under the advice and direction of the Court, and the mixed question requires the application of the powers of the Court and jury; and yet in seeming contradiction to this, it has been repeatedly held that the reasonableness of notice or demand, or due diligence when the facts were settled, was a question of law for the Court, and not a question of fact for the jury.

The facts of the case being ascertained, it is the duty of the Court to *declare* the law to the jury, who have a corresponding duty to receive and carry out the law as declared by the Court. See 2 How. 459; 1 Peters, 578; 21 Wend., 643; 4 Leigh, 50; 6 Ohio, 55; 9 Peters, 33.

Having commented briefly on the Law Merchant in its application to the bill or order under consideration, we now direct our attention to the evidence in the cause, as set forth in the bill of exceptions.

The order bears date June 4th, 1873, and appears to have been drawn simultaneously with the execution of the contract between the parties, although it was not delivered to the plaintiff according to his own evidence, until sometime in January or February, 1874 ; but according to the evidence of the witness Adams, who was attending to defendant's business, it was delivered by him to the plaintiff as early as October or November, 1873.

As a mean between these contradictory statements, as to the time, we may assume that the order was delivered to the plaintiff some time in December, 1873.

The proof shows that it was not presented to Hopkins, nor demand of payment made until the 13th day of December, 1875. During this long lapse of time it does not appear that any efforts were made or steps taken by the plaintiff to collect the order, or fix the liability of the defendant in case of default on the part of Hopkins and wife.

True, it appears that some time in the month of March, 1874, the plaintiff went out to see Hopkins, and tried to get some lumber from him ; but Hopkins refused to let him have it without the money, or defendant's order. At this time the plaintiff had been in possesion of the order on Hopkins and wife some three months, yet he failed to take it with him, and so far as we can learn from the evidence, failed to inform Hopkins and wife that he had such order.

In fact Hopkins in his testimony states that he was not aware of the existence of the order until it was presented to him in December, 1875, nearly or quite two years after its delivery to plaintiff. In explanation of the delay and want of diligence in endeavoring to collect the order from Hopkins and wife, plaintiff complains of the defendants delay in delivering it to him.

The contract it is true, does not specify in words when the order was to be delivered, but we think it may be fairly inter-

preted as entitling the plaintiff to the order on the completion of the work.

The order bearing even date with the contract, we must suppose that it was the intention of the defendant to deliver it to the plaintiff when the work was done, and although it was not delivered until five months afterward, it was not because, as Adams states, of any disposition to withhold it, but because of the plaintiff's failure to call for it at his place of business. When it was delivered, it was accepted by the plaintiff without objection, and this acceptance of the order without objection or protest, must be regarded as a waiver of any and all objections that might have been urged against it on account of delay in its delivery.

Some time in the summer of 1873, the notes due from Hopkins and wife to the defendant, were placed in the hands of Wassell and Moore for collection, previous to which the defendant had entered a credit to Hopkins and wife on one of the notes for the amount of the order, thus reducing their indebtedness to him by that amount.

The settlement was made between defendant, and Hopkins and wife, and consequent cancellation of the notes and contract between them some time in July, 1874, nearly or quite seven months after the delivery of the order to the plaintiff; and Hopkins in his testimony, states that if the order had been presented to him at any time before this settlement, he would have paid it; and the defendant in his testimony, speaking of the order, states he supposed the matter was all settled long before the suit was brought, and that the plaintiff never informed him that the order was not paid.

In further explanation of the cause of delay in not sooner presenting the order, the plaintiff states that when he secured it, he took it home and left it. That he was living over the river, at Argenta, and did not see Hopkins to present it to him for a long time after he received it.

On cross examination he further stated that the reason why he did not sooner present the order was that Hopkins lived a long way off, out in the country, and it was not convenient for him to go out and see him, and he considered him good any way. That if he happened to meet him in Little Rock, he did not have the order with him. It was at his house across the river, at Argenta.

The plaintiff states that very soon after he did present the order to Hopkins, he notified the defendant, through Adams, of the non-payment, but whether it was a day, or a week or a month, or longer after its presentment, does not appear.

The evidence, taken as a whole, clearly indicates that the plaintiff from the beginning relied on the solvency of Hopkins and wife, and confided in their ability and disposition to pay the order, rather than on any ulterior or contingent liability of the defendant, and this may account for the plaintiff's delay in presenting the order and demanding payment.

Having decided that the order is a bill of exchange, to be governed by the law merchant as it affects the rights of the parties thereto, and having already considered what were the necessary steps to be taken by the plaintiff who was the payee and holder of the order, to fix the liability of the defendant, we are, therefore, upon a careful review of the testimony, most clearly of opinion that the omissions, neglects and failures of the plaintiff to take the requisite steps neccessary to fix the liability of the defendant upon default of Hopkins and wife, in law operates as a discharge of the defendant from all liability on the order.

But then it is said this suit was not instituted upon the order, but upon the written contract between the plaintiff and defendant.

True, it is not brought distinctively on the order, but is founded on the written contract of which the provision for the

order is a component and essential part, but which the plaintiff would eliminate from the contract and treat as a nullity.

As before shown, the plaintiff bound himself to receive the order in full consideration for the work done, and is therefore not at liberty to ignore or treat it as a nullity. He must stand by his contract, and recover upon the order, if he recover at all.

But it may be urged, there is hardship in this case; that the plaintiff has completed the defendant's work according to contract and received nothing for it. But this cannot be truthfully said, since the plaintiff was paid in an order on Hopkins and wife which he was bound to receive, and if he failed to realize the amount of the order, it was his own fault, for it can hardly be doubted but that by due diligence on his part he could have collected the order from Hopkins and wife, or in case of their default, the liability of the defendant would have been irrevocably fixed.

The law merchant requires certain steps to be taken by the holder of commercial paper in order to fix the liability of the drawer and endorser. This being neglected, they are discharged from all liability on the paper, and this without regard to the consideration proceeding from the holder to the drawer or endorser.

In the light of these conclusions as to the law and facts of the case, we are of opinion that the verdict and judgment were not authorized by either, nor indeed by the instructions of the Court.

The first instruction moved by the plaintiff was properly given by the Court.

The second and third were properly refused.

The fourth ought to have been rejected also, for it assumes that it was not necessary for the plaintiff to present the order and demand payment of Hopkins within due and reasonable

time after receiving it. The assumption we think wholly unwarranted.

The fifth ought also to be rejected. The facts do not authorize such an instruction. The proof is that the amount of the order for $550 was credited on one of the notes long before their settlement with the defendant, and so the latter clause of the instruction is objectionable, as the defendant's liability to pay the order was dependent upon the default of Hopkins and wife after due diligence by plaintiff to collect the amount of the order from them.

The sixth, like the preceding instruction, was not warranted by the facts of the case and, strictly, had no foundation to rest upon. The presentment of the order, if made in due time, would not have fixed the liability of the defendant unless he had been duly notified of such presentment and the default of Hopkins and wife.

The seventh would not have been objectionable if it had been accompanied with an explanation of the law as to the time of presentment and demand of payment of the order and of the notice necessary to fix the liability of the defendant. As the instruction was asked, it was calculated to mislead and leave the jury in doubt, and was properly rejected.

The first and second instructions asked for by the defendant were properly given.

The third ought not to have been given unless with an exposition of the law of the case. The Court in declaring that it was for the jury to say, from all the circumstances, what constitutes reasonable time and reasonable diligence according to the law merchant, without explanation or declaration of the law in its bearings upon the facts of this case, in effect surrendered to the jury what rightly belonged to the Court.

The fourth and fifth were properly given.

The instructions of the Court assume throughout, rightly,

as we think, that the order under consideration was a bill of exchange and governed by the rules of the law merchant, but the Court failed to explain and declare to the jury what the law merchant is, as it regards due presentment and demand of payment of a bill or order, and due notice of the default of the payee; and in thus failing to explain and declare the law in its bearing upon the facts of the case, notwithstanding the facts were manifestly clear and unambiguous, the court in our judgment committed a grave error, and this may account for the verdict of the jury which, we think, was not warranted by the law or the facts of the case.

The Circuit Court should have set aside the verdict of the jury and granted the defendant a new trial.

The judgment of the Circuit Court is, therefore, reversed, and this cause remanded with instructions to said Court to grant the defendant a new trial and proceed with the cause not inconsistent with this opinion.